UNITED STATES, Appellee,

v.

Warren A. BYRD, Private, U.S. Army, Appellant.

No. 49,363.
SPCM 19739.

U.S. Court of Military Appeals.

July 27, 1987.

For Appellant: *Major Lawrence F. Klar* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel Arthur L. Hunt, Major Stephen R. Dooley, Captain Paul E. Conrad, Captain Floyd T. Curry.*

For Appellee: *Captain Frederick A. Johnson* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Thomas E. Booth* (on brief).

### Opinion

EVERETT, Chief Judge:

Private Byrd was tried at Fort Gordon, Georgia, by a military judge sitting as a special court-martial. Pursuant to his pleas, appellant was convicted of attempted distribution of marijuana on June 7, 1983, and possession of some amount of marijuana on June 29, 1983, in violation of Articles 80 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 880 and 934, respectively. His sentence was bad-conduct discharge, confinement for 99 days, forfeiture of $250.00 pay per month for 6 months, and reduction to Private E-1. The findings and sentence were approved by the convening authority and affirmed by the Court of Military Review. We granted review on these issues:

### I

WHETHER THE MILITARY JUDGE ERRED BY ACCEPTING APPELLANT'S PLEAS OF GUILTY TO ATTEMPTED DISTRIBUTION OF MARIJUANA (SPECIFICATION OF CHARGE I) WHERE THE FACTS IN THIS CASE SHOW THAT APPELLANT MADE NO MORE THAN INITIAL PREPARATION TO COMMIT THE OFFENSE OF DISTRIBUTION OF MARIJUANA AND THAT APPELLANT CLEARLY ABANDONED HIS ATTEMPT TO COMMIT HIS INTENDED OFFENSE PRIOR TO ANY TRANSGRESSION OF THE LAW.

### II

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO ADEQUATELY EXPLAIN THE ELEMENTS OF ATTEMPTED DISTRIBUTION OF MARIJUANA TO APPELLANT, THEREBY RENDERING HIS PLEAS OF GUILTY TO THAT OFFENSE IMPROVIDENT.

### I

In connection with the charge of attempted distribution, the parties stipulated to these facts:

On or about 6 June 1983, while at Community Center # 1, on Fort Gordon, Georgia, SP4 Cecil Calloway met the accused for the first time in the latrine. The accused and SP4 Calloway engaged in general conversation and the accused mentioned something about marijuana. SP4 Calloway, who was acting as a member of the Fort Gordon Drug Suppression Team at the time, asked the accused if he could get some marijuana for him. The accused told SP4 Calloway he knew of someone who could get him a five dollar bag for ten dollars. The accused attempted to contact the driver of cab # 28 for this purpose, but found that cab # 28 was not working that day. The accused told SP4 Calloway to come back the following day around 1600 hours and he would try to contact cab # 28 again.

At 1600 hours, 7 June 1983, SP4 Calloway and Military Police Investigator Brian S. Przeslawski attempted to make contact with the accused as had been previously arranged. The accused, however, did not arrive at Community Center # 1 until 1930 hours. Upon meeting Przeslawski and Calloway, the accused took them to Gym # 6 where he introduced them to Mr. Marvin McFadden, the driver of cab # 28. McFadden informed them that he could get marijuana for them for ten dollars. Inv. Przeslawski agreed and gave ten dollars to the accused who consented to this transaction. The accused was supposed to meet Przeslawski at the Community Center in half an hour with the marijuana. Mr. McFadden then took the accused and five other soldiers to a liquor store off-post where six packets of the marijuana were purchased. *The accused purchased a bottle of liquor with the money Przeslawski gave him because he was afraid he'd be caught if he tried bringing marijuana back on post.*

(Emphasis added.)

During the providence inquiry, Byrd explained that, after leaving Fort Gordon in

the cab "on the way down there, I had—I didn't have the intention of bringing the marijuana back. I was going to come back and tell Calloway and Przeslawski that, you know, it wasn't a good idea to have marijuana on post, and I was going to explain that it wasn't worth taking a chance." He also "didn't want . . . to have the name of a dope peddler . . . because, . . . I was meeting them to acquire friendship." Therefore, when the taxi reached the liquor store, he did not "participate" in purchasing drugs but went in and "bought some liquor instead." The military judge concluded that, "when . . . [appellant] took the money and went in the cab, . . . [he was] taking a direct step toward the commission of distribution of marijuana." Consequently, the guilty pleas were accepted.

Now appellant contends that his pleas of guilty to attempted distribution were improvident and should be set aside, because his conduct constituted only preparation and fell short of an attempt. Moreover, he argues that, even if his acts would otherwise have constituted an attempt, he is insulated from liability by his voluntary abandonment of the intended crime before its completion.

## II

### A

The Federal Criminal Code contains no section dealing generally with attempts. Instead, various sections of Title 18 include prohibitions of specific attempts. Likewise, before enactment of the Uniform Code of Military Justice, military law also had no comprehensive prohibition of attempts. *See United States v. Thomas,* 13 U.S.C.M.A. 278, 286, 32 C.M.R. 278, 287 (1962).

However, certain attempts—such as attempts to desert, to strike a noncommissioned officer, or to create mutiny—were specifically proscribed. *See* Articles of War (A.W.) 58, 65, 66; *see also* A.W. 76, 81, 88. Also, it was contemplated that other attempts could be punished as violations of

A.W. 96, the General Article, which prohibited conduct that was service-discrediting or prejudicial to good order and discipline. *See United States v. Thomas, supra;* para. 300 n. 2, Manual for Courts-Martial, U.S. Army, 1921.

"Attempt" was defined in successive Manuals for Courts-Martial. According to paragraph 417 of the 1921 Manual:

An attempt to commit a crime is an act done with specific intent to commit the particular crime and proximately tending to, but falling short of, its consummation. There must be an apparent possibility to commit the crime in the manner specified. Voluntary abandonment of purpose after an act constituting an attempt is not a defense.

The definition in the 1928 and 1949 Manuals was as follows:

An attempt to commit a crime is an act done with intent to commit that particular crime, and forming part of a series of acts which will apparently, if not interrupted by circumstances independent of the doer's will, result in its actual commission.

Para. 152*c*, Manual for Courts-Martial, U.S. Army, 1928; para. 183*c*, Manual for Courts-Martial, U.S. Army, 1949.

The Articles for the Government of the Navy also did not have any general statutory prohibition of attempts; but apparently they often were punishable as lesser-included offenses. *See, e.g.,* section 91, Naval Courts and Boards, 1937 (recognizing attempted fraud as a lesser-included offense of fraud in violation of Article 14 for the Government of the Navy.) According to naval law:

If an attempt is not provided for as a specific charge it should be alleged under the appropriate general charge.

\* \* \* \* \* \*

An attempt to commit a crime consists of three elements: (1) The intention to commit the crime, (2) performance of some act toward the commission of the crime, and (3) the failure to consummate the crime. It follows that one proven

actually to have committed an offense cannot be found guilty of an attempt to do so and that a specification alleging such commission does not support a charge of attempt.

*See* sections 42–43, Naval Courts and Boards, 1937.

The drafters of the Uniform Code of Military Justice decided that it should contain a separate Article concerning attempts. Thus, Article 80 originally provided:

> (a) *An act, done with specific intent to commit an offense* under this code, *amounting to more than mere preparation* and *tending but failing to effect its commission,* is an attempt to commit that offense.

> \* \* \* \* \* \*

> (c) Any person subject to this code may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated.

(Emphasis added.) The 1956 recodification changed "code" to "chapter" and "but" to "even though." Act of Aug. 10, 1956, ch. 1041, 70A Stat. 65.

The 1951 Manual for Courts-Martial explained:

> An attempt to commit an offense is an act or acts done with the specific intent to commit the particular offense which, except for the interference of some cause preventing the carrying out of the intent, apparently would result in the actual commission of the offense.

> To constitute an attempt there must be a specific intent to commit the particular offense *accompanied by an overt act which directly tends to accomplish the unlawful purpose.* The overt act must be more than mere preparation to commit the offense. Preparation consists in devising or arranging the means or measures necessary for the commission of the offense. *The overt act required goes beyond preparatory steps and is a direct movement towards the commission of the offense.* However, the overt act need not be the last proximate act to the consummation of the offense attempted to be perpetrated.

Para. 159, Manual for Courts-Martial, United States, 1951 (emphasis added).

According to the interpretation in the Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, at 249:

> [A]n accused is guilty of an attempt under the Uniform Code if he has committed acts requisite to constitute an attempt even though of his own accord he desisted before the consummation of the intended offense.

The 1969 Manual for Courts-Martial used language almost identical with that employed in 1951; but it slightly expanded the discussion of impossibility. *See* para. 159, Manual for Courts-Martial, United States, 1969 (Revised edition).

The 1984 Manual—which took effect after the case at bar arose—repeats that the overt act must be one which "apparently tended to effect the commission of the intended offense"; it must "directly tend[ ] to accomplish the unlawful purpose" and be "a direct movement toward the commission of the offense." Furthermore,

> [t]he overt act need not be the last act essential to the consummation of the offense. For example, an accused could commit an overt act, and then voluntarily decide not to go through with the intended offense. An attempt would nevertheless have been committed, for the combination of a specific intent to commit an offense, plus the commission of an overt act directly tending to accomplish it, constitutes the offense of attempt. Failure to complete the offense, whatever the cause, is not a defense.

Part IV, para. 4*c* (2), Manual for Courts-Martial, United States, 1984.

### B

█ Although the legislative history of Article 80 and the language of the various Manuals for Courts-Martial offer general guidance, they provide no litmus test for distinguishing "preparation" from "attempt." Certainly, there need be no physical proximity of the overt act to the place

where the intended crime is to be committed. Thus, if Byrd had gone off-post and obtained marijuana but had been arrested before he returned to deliver it to his buyer, the evidence would have sustained a conviction for attempt to distribute.

There seems to be some internal inconsistency in the discussion of attempts in the 1951 and 1969 Manuals. The 1951 requirement of an "act or acts done with the specific intent to commit the particular offense which, except for the interference of some cause preventing the carrying out of the intent, apparently would result in the actual commission of the offense" appears to impose a stricter requirement than that stated immediately thereafter—namely, that "there must be a specific intent to commit the particular offense accompanied by an overt act which directly tends to accomplish the unlawful purpose." Of some aid in reducing the confusion is the view of the Court of Appeals for the Second Circuit that, to be guilty of an attempt, a "defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime" and that "[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *see also United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); ALI Model Penal Code § 5.01 (1962).

■ If this test is employed, the evidence provided by stipulation and by Byrd's answers during the providence inquiry does not establish an attempt. Even though appellant had received $10.00 from the undercover agent and had left Fort Gordon in a taxicab enroute to a liquor store where marijuana could be purchased, his conduct to that point had not gone beyond preparation. Riding to the liquor store with the other occupants of the taxicab was not "strongly corroborative of the firmness of" Byrd's intent to distribute marijuana. The act is simply too ambiguous; and too many other steps remained before the distribution could be consummated. Consequently, the stipulation and particularly the providence inquiry were inconsistent with the pleas of guilty. *Cf. United States v. Joyce*, 693 F.2d 838 (8th Cir.1982); *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir.1979); *Wooldridge v. United States*, 237 F. 775 (9th Cir.1916).

## C

Appellate defense counsel have also relied on a defense of voluntary abandonment—the doctrine of *locus poenitentiae.* The 1921 Manual for Courts-Martial expressly rejected this defense. However, in subsequent Manuals the discussion on this point was omitted, up until the 1984 Manual. Although the Legal and Legislative Basis of the 1951 Manual purports to find a rejection of voluntary abandonment in the Manual language concerning attempt, we do not perceive the basis for that interpretation—especially in light of the Manual's failure to use clear language like that of its 1921 predecessor.

Among the commentators, there is strong support for the defense of voluntary abandonment. Thus, Professors W. LaFave and A. Scott, in their *Handbook on Criminal Law* § 60 (1972), urge adoption of the defense:

Considerable uncertainty exists in the cases as to whether voluntary abandonment is a defense to a charge of attempt, but the better view is that it is. As with the modern view of impossibility, this follows from the fact that the purpose of the crime of attempt is to subject dangerous persons to the corrective processes of the law.

*Wharton's Criminal Law* asserts:

Although there is authority to the contrary, a person who has performed an act which is beyond the stage of preparation and within the zone of attempt may nevertheless avoid liability for the attempt by voluntarily abandoning the criminal effort.

4 *Wharton's Criminal Law* § 748 (C. Torcia, 14th ed., 1981) (footnotes omitted).

Professors Perkins and Boyce have urged adoption of the voluntary-abandonment defense. *See* R. Perkins & R. Boyce, *Criminal Law* 654–58 (3d ed. 1982). *See also* Rotenberg, *Withdrawal as a Defense to Relational Crimes*, 1962 Wis. L.Rev. 596. Similarly, the Model Penal Code endorses an affirmative defense of abandonment:

(4) *Renunciation of Criminal Purpose.* When the actor's conduct would otherwise constitute an attempt under Subsection (1)(b) or (1)(c) of this Section, it is an affirmative defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose. The establishment of such defense does not, however, affect the liability of an accomplice who did not join in such abandonment or prevention.

Within the meaning of this Article, renunciation of criminal purpose is not voluntary if it is motivated, in whole or in part, by circumstances, not present or apparent at the inception of the actor's course of conduct, that increase the probability of detection or apprehension or that make more difficult the accomplishment of the criminal purpose. Renunciation is not complete if it is motivated by a decision to postpone the criminal conduct until a more advantageous time or to transfer the criminal effort to another but similar objective or victim.

ALI Model Penal Code § 5.01(4) (1962), reprinted in ALI *Model Penal Code and Commentaries* 296–97 (1985). According to the drafters of the Model Penal Code,

the rationale for recognizing this defense is as follows:

On balance, it is concluded that renunciation of criminal purpose should be a defense to a criminal attempt charge because, as to the early stage of an attempt, it significantly negatives dangerousness of character, and as to the latter stages, the value of encouraging desistance outweighs the net dangerousness shown by the abandoned criminal effort.

Comment, ALI Model Penal Code § 5.01(4), *supra* at 360. Responding to critics, the drafters of the Model Penal Code observed:

It is possible, of course, that the defense of renunciation of criminal purpose may add to the incentives to take the *first* steps toward crime. Knowledge that criminal endeavors can be undone with impunity may encourage preliminary steps that would not be undertaken if liability inevitably attached to every abortive criminal undertaking that proceeded beyond preparation. But this is not a serious problem. First, any consolation the actor might draw from the abandonment defense would have to be tempered with the knowledge that the defense would be unavailable if the actor's purposes were frustrated by external forces before he had an opportunity to abandon his effort. Second, the encouragement this defense might lend to the actor taking preliminary steps would be a factor only where the actor was dubious of his plans and where, consequently, the probability of continuance was not great.

*Id.* at 359–60.

In various Federal cases the doctrine of voluntary abandonment seems to have been recognized either expressly or implicitly.[1] Various state legislatures and state

1. *United States v. Joyce*, 693 F.2d 838, 841–42 (8th Cir.1982) (abandonment theory adopted); and *United States v. Jackson*, 560 F.2d 112, 118–19 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977) (abandonment theory adopted). *See United States v. McDowell*, 714 F.2d 106 (11th Cir.1983) (criticizes *Joyce*, but adopts abandonment theory as defense to attempt); United States v. Rivera-Sola, 713 F.2d

866, 870–71 (1st Cir.1983) (distinguishes *Joyce* on facts, but adopts abandonment theory as a defense to attempt); *United States v. Williams*, 704 F.2d 315, 321 (6th Cir.1983) (distinguishes *Joyce* on facts, but recognizes abandonment theory as defense to attempt). *Cf. United States v. Bussey*, 507 F.2d 1096, 1098 (9th Cir. 1974) (recognizes abandonment defense to the crime of attempt).

courts have also accepted this defense.[2] However, the defense has only been applied when an individual abandons his intended crime because of a change of heart; and it has not been allowed when the abandonment results from fear of immediate detection or apprehension, *see United States v. Jackson, supra,* 560 F.2d 112, the decision to await a better opportunity for success; or inability to complete the crime, *see United States v. McDowell,* 714 F.2d 106 (11th Cir.1983); *United States v. Rivera-Sola,* 713 F.2d 866 (1st Cir.1983).

In *United States v. Thomas, supra,* 13 U.S.C.M.A. 278, 32 C.M.R. 278, this Court considered whether impossibility constituted a defense to the charge of attempt under Article 80. In rejecting the defense, we observed that

> [t]he language [of the statute] seems clear. The elements of the offense denounced are: (1) an overt act, (2) specific intent, (3) more than mere preparation, (4) tending to effect the commission of the offense, and (5) failure to effect its commission.
>
> There are no other elements to the offense. Boards of review and this Court possess no warrant to limit the language chosen by the Congress in the definition. The language is clear and unambiguous and is to be applied not interpreted.

*Id.* at 286, 32 C.M.R. at 286.

However, there were other considerations that favored the results reached in *Thomas.* In addition to the statutory language, the Court could also rely on "the history of the adoption of the Uniform Code of Military Justice and the legislative history of this Article." *Id.*

▮ In the present case, it could be argued that, if the five elements of the offense had been established, then voluntary abandonment is immaterial as to guilt or innocence and only relevant in extenuation. However, voluntary abandonment involves an affirmative defense, rather than—as in *Thomas*—the elements of the crime. Moreover, here some of the history favors acceptance of voluntary abandonment as a defense. The failure of the 1928, 1949, and 1951 Manuals for Courts-Martial to specifically reject the doctrine after the 1921 Manual had done so seems to imply a disapproval of the earlier view. Also, military law seems to recognize a doctrine similar to abandonment. A party to an agreement to commit an offense "may, before the performance of an overt act to effect the object of the conspiracy, abandon the design and withdraw from the conspiracy, but there must be some affirmative act of withdrawal." *See* para. 160, 1951 Manual, *supra;* para. 160, 1969 Manual, *supra.*[3] Finally, it is clear that, for military justice, Congress has indicated some preference for "the principles of law ... generally recognized in the trial of criminal cases in the United States district courts," *See* Art. 36, UCMJ, 10 U.S.C. § 836; and, since the defense of voluntary abandonment is gaining increasing acceptance in federal criminal trials, there is added reason to apply it in trials by courts-martial.[4] With all this in mind, it appears that the affirmative de-

---

**2.** Florida Stat. Ann. § 777.04(5)(a) (1974); Indiana Code § 35–41–10 (Burns 1979); Montana Code § 94–4–103(4) (R.C.M. 1947); Oregon Revised Statutes § 161.430 (1971); Wyoming Stat. § 6–1–201(b) (1981). *See People v. Kimball,* 109 Mich.App. 273, 311 N.W.2d 343 (1981); *State v. Latraverse,* 443 A.2d 890 (R.I.1982); *People v. Miller,* 2 Cal.2d 527, 42 P.2d 308 (1935); *but see People v. Von Hecht,* 133 Cal.App.2d 25, 283 P.2d 764 (1955), *criticized and limited, People v. Dillon,* 3 Cal.3d 441, 94 Cal.Rptr. 390, 668 P.2d 697, 702 n. 2 (1983).

**3.** Admittedly, it can be argued that, since the drafters of the Manual expressly approved the

defense of abandonment and withdrawal in connection with a conspiracy prosecution, they would likely have made express provision for the defense of abandonment in connection with attempts, if they had intended this defense to exist.

**4.** In *Thomas,* the Court reached the result favored by the Model Penal Code, one of the most comprehensive reexaminations of criminal law. So, too, our acceptance of voluntary abandonment follows the precept of the Model Penal Code.

fense of voluntary abandonment must be recognized in military justice.

■ The recitals contained in the stipulation of fact in this case are not sufficient to raise the defense of voluntary abandonment. They indicate that Byrd desisted from the project by reason of fear of apprehension, *see United States v. Jackson, supra.* On the other hand, his answers during the providence inquiry do suggest a change of heart and a voluntary abandonment of his criminal venture. Thus, those answers were inconsistent with the guilty pleas and would require either that the military judge make further inquiry or set aside the pleas.

### III

The decision of the United States Army Court of Military Review is reversed; the findings and sentence are set aside; the record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered.

Judge SULLIVAN did not participate.

COX, Judge (concurring in the result):

I have often expressed my reservations about making substantive law on a guilty-plea record,* and, therefore, I do not join the lead opinion in its adoption of the law of voluntary abandonment. My rationale is that the issue was not fully litigated below and, therefore, our observations are mainly hypothetical and academic. I must admit, however, that I am very impressed with the Chief Judge's learned opinion.

I concur in the result because the admissions and stipulations in this case fall short of proving an attempt to distribute drugs. Art. 80, Uniform Code of Military Justice, 10 U.S.C. § 880.

---

* *See* my separate opinion in *United States v. Reed,* 24 M.J. 80, 86 (C.M.A.1987).