UNITED STATES, Appellee,

v.

James F. PRESTO, Specialist Five U.S. Army, Appellant.

No. 49887.

CM 443261.

U.S. Court of Military Appeals.

Aug. 10, 1987.

For Appellant: *Colonel Brooks B. La Grua, Major Joel D. Miller, Captain Stewart C. Hudson, Captain Joseph Tauber* (on brief); *Colonel William G. Eckhardt, Lieutenant Colonel Paul J. Luedtke, Captain Rita R. Carroll.*

For Appellee: *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Captain Denise K. Vowell, Captain Karen L. Taylor* (on brief); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Lieutenant Colonel Joseph A. Rehyansky, Captain Karen A. Charbonneau.*

*Opinion of the Court*

EVERETT, Chief Judge:

In this appeal from his general court-martial conviction,[1] appellant contends that his pleas of guilty to attempted sale of 3 kilograms of marijuana were improvident because the record does not establish that he took any action tending to effect the consummation of the sale, as opposed to

---

1. Presto pleaded guilty to wrongful possession and wrongful sale of marijuana and to attempted sale of marijuana, in violation of Articles 134 and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 934 and 880, respectively. The members sentenced him to a bad-conduct discharge, confinement for 6 months, forfeiture of $75.00 pay per month for 6 months, and reduction to the lowest enlisted grade. The convening au-thority approved these results, except that he suspended confinement in excess of 3 months. The Court of Military Review affirmed the findings. However, because appellant had spent 36 days in confinement beyond his release date after having served the 3 months' unsuspended confinement, the court below approved the adjudged sentence except for forfeitures. 17 M.J. 1105 (1984).

acts merely in preparation for the sale. 19 M.J. 257. We agree.

## I

After Presto sold 567.59 grams of marijuana to two acquaintances who turned out to be a confidential source and an agent of the Criminal Investigation Command (CID), the two buyers asked about purchasing an additional 10 kilograms of marijuana from him. He agreed to try to obtain the requested amount but warned that he doubted if he could get more than 2 or 3 kilograms. As Presto explained during the providence inquiry [2]:

ACC: Well, they had taken the other amount and had asked me to get some more. I was going to get it for them, and I called the people that I had got the previous amount from and asked them if they could come up with that. They weren't sure, but they told me that they would try, and I called them a couple of times to see, but thank God I didn't get it.

MJ: Now, how much did the agents want you to obtain?

ACC: They wanted me to get 10 [kilograms] but I said at the most I might be able to find 2 or 3 [kilograms].

MJ: Okay. So, you've entered a plea to attempted sale, wrongful sale of 3 kilograms. Are you willing to accept that you told them you could get 3 kilograms of marijuana?

ACC: Yes, sir.

MJ: And that was on 14 May that you told them that?

ACC: Yes. I guess so.

MJ: And when did you then start trying to obtain those three kilograms? Was it on 14 May?

ACC: Well, I made a call that evening, yes, sir, and then the following, I think it was a Monday when they arrested me. Before I was arrested I tried to call and see if I could get it for them.

MJ: So, apparently the act that the government is relying upon here is— Well, what is it, Captain Creighton, in your view of the evidence?

TC: Well, during the initial—Just a moment. *The act would be his contacting the source i[n] attempting to get sale, to get a large quantity, the 3 kilograms, he placed a phone call and he continued checking with his sources in an attempt to get this quantity of drugs.*

\* \* \* \* \* \*

MJ: Okay. Well, Specialist, what happened here that you weren't able to obtain the three kilograms? Do you know? Your source just never came up with it, is that it?

ACC: Well, they didn't have it, and by the time the 17th came around I was happy they couldn't find it.

MJ: But—

ACC: If they had had it when I initially asked them for it I probably would have went and got it for Joe and Agent Lane.

MJ: Now, you said on the 17th, also, you made a call to try to find the 3 kilograms before you were arrested?

ACC: They [the informant and the agent] were supposed to come back and pay me. I made a couple of calls to make them feel that I was trying to do what they wanted because I had to—He wanted me to prove to him that I was trying to get something for him so he would come over and give me my money because I wanted both of them out of the house.

(Emphasis added.) Appellant explained in the stipulation of fact that he had decided sometime during the 3 days' time not to consummate the large sale but, instead, was acting only to persuade his buyers of his good efforts in order to get the remaining money owed him from the first sale.

## II

Article 80(a), Uniform Code of Military Justice, 10 U.S.C. § 880(a), provides that "[a]n act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its

**2.** *See United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969).

commission, is an attempt to commit that offense." As we recently observed in *United States v. Byrd*, 24 M.J. 286 (C.M.A. 1987), the difficulty lies in drawing the line between what constitutes "mere preparation" and what, on the other hand, is "direct movement towards the commission of the offense." *Id.* at 289, quoting from para. 159, Manual for Courts-Martial, United States, 1951, reiterated in para. 159, Manual for Courts-Martial, United States, 1969 (Revised edition).

In *Byrd*, this Court found some help in this regard in the approach of the Court of Appeals for the Second Circuit:

[T]o be guilty of an attempt, a "defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime" and that "[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir.), *cert. denied*, 434 U.S. 941 [98 S.Ct. 434, 54 L.Ed.2d 301] (1977); *see also United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir. 1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); ALI Model Penal Code § 5.01 (1962).

*Id.* at 290.

The court below used essentially this same standard to determine whether Presto's "acts [had] pass[ed] the line of demarcation between preparation and direct movement toward the offense." 17 M.J. 1105, 1106 (A.C.M.R. 1984). However, we disagree with their application of that standard to the facts established by the stipulation entered at trial and by Presto's answers during the providence inquiry.[3]

Although placing a call to a potential source in order to determine the availability of drugs tends to corroborate appellant's criminal intent, we are unconvinced that the statutory requirement of "more than mere preparation" has been met. Unlike the accused in *Byrd*, appellant had not received from the prospective buyers the money for the purported purchase. In fact, he was still owed money from a prior transaction with these buyers. The phone calls from appellant had not located drugs available for purchase. Moreover, if a supply of the desired drugs had been located, then Presto would have had to negotiate a price for his own purchase and thereafter would have had to go to the source and pick up the drugs.[4]

When the military judge asked trial counsel about the act on which the Government was relying, the response made clear that this act was the placing of phone calls. The Government has not called our attention to any case holding that preliminary telephonic inquiries with a view to locating a source of contraband constituted "more than mere preparation" for its sale. As we said in *Byrd*:

The act is simply too ambiguous; and too many other steps remained before the distribution could be consummated. Consequently, the stipulation and particularly the providence inquiry were inconsistent with the pleas of guilty. *Cf. United States v. Joyce*, 693 F.2d 838 (8th Cir. 1982); *United States v. Monholland*, 607 F.2d 1311, 1318 (10th Cir. 1979); *Wooldridge v. United States*, 237 F. 775 (9th Cir. 1916).

24 M.J. at 290.

### III

The decision of the United States Army Court of Military Review is reversed as to

---

3. We agree with appellate defense counsel that in some respects there seems to be a discrepancy between the facts actually established at trial and the facts recited in the opinion of the court below. For example, that opinion refers to appellant's placing an order (17 M.J. at 1106), but the evidence does not show that any order was ever placed.

4. The Court of Military Review commented that "[u]nder these circumstances, placing an order with the supplier was the final step necessary to complete the transaction, save only the formalities of the exchange of the drugs for the purchase money." *Id.* at 1107. However, it was not established that Presto ever placed an "order" with a supplier. Furthermore, there is no indication that a supplier would have delivered the drugs. Instead, the record indicates that appellant expected to have to go to the supplier and obtain delivery of the drugs.

Charge II and its specification and the sentence. The findings of guilty thereon and the sentence are set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing may be ordered, or the convening authority may reassess the sentence based on Charge I.

Judge SULLIVAN did not participate.

COX, Judge (concurring):

I concur. Appellant's conduct may have been sufficient to support a conviction for conspiracy, a question we need not decide here (*see* 10 U.S.C. § 881); but I agree that it never advanced beyond mere preparation, and it does not support a conviction for attempted sale. While I am reluctant to reverse one specification out of several on a guilty plea, particularly where such a lenient sentence has been adjudged, Article 45 * compels the result. An accused must plead to each element of the offense, and those pleas, if true, must establish an offense.

* Uniform Code of Military Justice, 10 U.S.C. § 845.