UNITED STATES, Appellee,

v.

Ronald P. HYSKA, Staff Sergeant, U.S. Army, Appellant.

No. 60,828.
CM 8701692.

U.S. Court of Military Appeals.

Sept. 25, 1989.

For appellant: *Captain Ralph L. Gonzalez* (argued); *Colonel John T. Edwards, Lieutenant Colonel Russell S. Estey, Major Marion E. Winter* (on brief).

For appellee: *Captain Jonathan F. Potter* (argued); *Colonel Norman G. Cooper, Lieutenant Colonel Gary F. Roberson, Major Gary L. Hausken* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

A general court-martial consisting of military judge alone found Hyska guilty of several drug offenses.* He now claims that the finding that he attempted wrongfully to distribute marijuana on February 18, 1987, should be set aside because it was based on improvident pleas of guilty. The primary issue now before us is whether the facts to which appellant stipulated and testified during the providence inquiry were sufficient to establish an attempt, in violation of Article 80, Uniform Code of Military

---

* In accordance with his pleas, appellant was also convicted of two substance-distribution offenses: one involving marijuana and the other involving both marijuana and lysergic acid diethylamide, in violation of Article 112a, Uniform Code of Military Justice, 10 USC § 912a. He was sentenced to a bad-conduct discharge, confinement and forfeiture of $500 pay per month for 18 months, and reduction to the lowest enlisted grade. The findings and sentence were approved by the convening authority and were affirmed by a divided Court of Military Review in a memorandum opinion dated May 24, 1988.

Justice, 10 USC § 880, or whether they demonstrated "mere preparation" to commit the crime. *Cf. United States v. Byrd*, 24 MJ 286 (CMA 1987).

## I

Hyska was brought to trial on two charges, each of which had two specifications. In specification 1 of Charge I, the Government alleged that on or about February 17, 1987, appellant "attempt[ed] to wrongfully distribute some amount of marijuana by going to a nearby apartment and informing Investigator Griffin, CIDC, that his neighbor would sell some quantity of marijuana or words to that effect." According to the second specification, on or about February 18, 1987, he

attempt[ed] to wrongfully distribute some amount of marijuana by going to a nearby apartment, giving Investigator Griffin, CIDC, a piece of paper with a phone number written on it, and telling Investigator Griffin to call him after he had contacted his source for illegal drugs and asked if he ... or his source had any illegal drugs to sell, or words to that effect.

The second Charge alleged in specification 1 that appellant "wrongfully distributed" marijuana on or about February 19, 1987, and, in specification 2, that on or about February 26, 1987, he "wrongfully distributed some" marijuana and some lysergic acid diethylamide.

Appellant pleaded not guilty to the first attempt, which the Government did not pursue and of which he was acquitted. Concerning the alleged attempt on February 18, Hyska testified that, on the previous day, he had met Elisa Griffin, who was an undercover investigator attached to the Fort Lewis Criminal Investigation Command (CID) Drug Suppression Team. At that time

she wanted to buy some marijuana. And I told her that I knew a girl from a party that would probably have some if she wanted it. She came back on the 18th—I told her to come back on the 18th. She came over [to his off-post apartment],

and she gave me a ride to—to Tanya's house—that was the female that I knew. And I went to Tanya's house with the intent to see if I could get her some marijuana. And Tanya wasn't home.

Griffin stayed in the car while he "went up to her door and knocked on her door, and there was a note saying that she wouldn't be home until later on." Hyska explained that "if she would have been home, I would have had Griffin go talk to her, and she would just purchase it right from her." His "intent, at that time, [was] to introduce Griffin to Tanya so that Tanya could sell some marijuana to Griffin." It was his "understanding that ... [Griffin] was going to pay for" the "marijuana."

Since Tanya was not at home,

I went back to the car and said she wasn't home. And I got in the car; we left that apartment, and went back to my house. And when we got in front of my house, she goes, "Well, can you check back with her later on, and I'll give you a call if she's got anything." At that time, she asked me for my phone number. And I went in the house and I gave her the phone number—I came back out of the house and gave her the phone number. And she called later, I think, in the evening and I said Tanya wasn't home. I never even went back over there. Um, I had been drinking that night, sir, and I was pretty well lit up.

The stipulation of fact which was admitted into evidence varied slightly from this account. It stated that

[w]hen Investigator Griffin called later that evening, the accused stated that Tanya did not have any drugs on hand. However, the accused told Griffin that Tanya would pick up drugs in the near future. The accused then instructed Investigator Griffin to call him about 1800 hours the following day.

On February 19, Griffin had called Hyska again at his home

and asked if I went back over to Tanya's house. And I said—um, at that time I said "no." And she asked me again if I

would go back over there and I said, "Okay, well, give me about an hour." At that particular time I never actually went over there. Tanya came by my house later that night.

While Tanya was there, Griffin called again to ask

if she could get some marijuana. And I turned around and I said, "Well, just a minute, Tanya is here. I'll ask her if she'll do it for you."

Tanya agreed to supply some marijuana; and so Griffin came to his apartment while Tanya was there and purchased $10 worth of marijuana.

On February 26, Griffin had called Hyska again at his house and asked for "more marijuana," as well as "some acid." Subsequently, Griffin "came over and handed me the money," which Hyska then delivered to Tanya. Thereafter, Tanya brought "the acid and marijuana" over to appellant's house; and Griffin returned there and took delivery.

## II

### A

Article 80(a) gives this definition of "attempt":

An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.

In the Court of Military Review, the majority concluded that the acts which appellant admitted were "more than mere preparation" and established an attempt to distribute marijuana on February 18. Unpub. op. at 2. Senior Judge Felder, dissenting in part, relied on *United States v. Presto*, 24 MJ 350 (CMA 1987), for his conclusion "that appellant's conduct did not cross the line from mere preparation to an attempt." Unpub. op. at 3.

As this Court has recently noted in *Byrd* and *Presto*, it often is difficult to establish the location of this line. Indeed, the Second Circuit has observed that "this is a classic example of a legal doctrine where, although the principle is clear, its application is fraught with difficulty." *United States v. Ivic*, 700 F.2d 51, 66 (2d Cir.1983). By way of clarification, we stated in *Byrd*:

[T]o be guilty of an attempt, a "defendant must have engaged in conduct which constitutes a substantial step toward commission of the crime" and ... "[a] substantial step must be conduct strongly corroborative of the firmness of the defendant's criminal intent." *United States v. Jackson*, 560 F.2d 112, 116 (2d Cir.), *cert. denied*, 434 U.S. 941, 98 S.Ct. 434, 54 L.Ed.2d 301 (1977); *see also United States v. Mandujano*, 499 F.2d 370, 376 (5th Cir.1974), *cert. denied*, 419 U.S. 1114, 95 S.Ct. 792, 42 L.Ed.2d 812 (1975); ALI Model Penal Code § 5.01 (1962).

24 MJ at 290.

Admittedly, there seems to be little need to corroborate an accused's intent after he has pleaded guilty, taken the stand, and admitted under oath that he possessed such an intent—as appellant did here and as the accused did in *Byrd*. Moreover, Hyska's criminal intent is strongly corroborated by his commission of the intended crime on the very next day—February 19. On the other hand, it would not conform to the policy of Article 45 of the Uniform Code, 10 USC § 845, which imposes limitations on acceptance of guilty pleas, and it would not be conducive to consistent interpretation of Article 80 were we to rule that certain acts by an accused were no more than "mere preparation" if he pleaded not guilty but, on the other hand, constituted an attempt if he pleaded guilty.

We need not, however, decide the issue which divided the court below and on which we granted review; and we need not determine whether the facts of this case are distinguishable from those in *Byrd* and *Presto*, or *United States v. McFadden*, 24 MJ 453 (CMA 1987)—where we held that the evidence showed no more than "mere preparation." Instead, we must set aside Hyska's conviction for attempted distribution on other grounds.

B

■ According to some authorities, "An indictment charging the accused with a specific crime will not support a conviction of an attempt to commit such offense." *See* 41 Am Jur 2d, *Indictments and Informations* § 306 (footnote omitted). Rejecting this rule, Article 79 of the Uniform Code, 10 USC § 879, provides, "An accused may be found guilty of an offense necessarily included in the offense charged or of an attempt to commit either the offense charged or an offense necessarily included therein." Thus, in view of the evidence and allegations in this case, Hyska could have been found guilty of the attempt on February 18 under the charge of wrongful distribution on February 19.

In such a situation, we conclude that Congress contemplated that the doctrine of merger would apply:

> Where commission of one crime necessarily involves commission of a second, the offense so involved is said to be merged in the offense of which it is a part.

21 Am Jur 2d, *Criminal Law* § 21 (footnote omitted).

■ According to Article 80(c), "Any person subject to this chapter may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated." This provision was undoubtedly designed to forestall arguments that "failure to consummate the ultimate crime intended is as much an element of the crime of attempt as the intent and the overt act; hence there can be no conviction for attempt where the substantive offense is complete." 21 Am Jur 2d, *Criminal Law* § 158 (footnote omitted). However, it did not mean that an accused might be convicted both of a substantive crime and of an attempt to commit that same crime, when a single continuous transaction was involved. Otherwise, a vindictive prosecutor could enhance the maximum punishment for a crime by charging as an attempt one or more of the acts taken by the accused to carry out the crime.

In this respect, attempt is treated differently from conspiracy. The Manual for Courts-Martial states:

> A conspiracy to commit an offense is a separate and distinct offense from the offense which is the object of the conspiracy, and *both the conspiracy and the consummated offense which was its object may be charged, tried, and punished.*

Para. 5c(8), Part IV, Manual for Courts-Martial, United States, 1984 (emphasis added). *Accord* para. 160, Manual for Courts-Martial, United States, 1969 (Revised edition) at 28–8; para. 160, Manual for Courts-Martial, United States, 1951 at 306. However, the Manual contains no similar provision with respect to attempts.

■ Perhaps a distinction may be made if an attempt is quite separate in time from the commission of a crime. However, if we assume, *arguendo*, that Hyska attempted a wrongful distribution of marijuana on February 18, this attempt merged continuously into the distribution of the marijuana the next day—a transaction involving the same potential supplier and the same purchaser. Accordingly, the conviction for the attempt should not be allowed to stand along side the conviction for wrongful distribution. We cannot say that there is no prejudice as to sentence from this error.

### III

The decision of the United States Army Court of Military Review is reversed as to specification 2 of Charge I and Charge I, as well as the sentence. The findings of guilty thereon are set aside and that Charge and specification are dismissed. The record of trial is returned to the Judge Advocate General of the Army for remand to that court for reassessment of the sentence based on the remaining findings of guilty.

Judges COX and SULLIVAN concur.