**UNITED STATES, Appellee,**

**v.**

**Juana L. SMITH, Specialist, U.S. Army, Appellant.**

No. 98–0356.

Crim.App. No. 9601110.

U.S. Court of Appeals for the Armed Forces.

Argued Oct. 5, 1998.

Decided May 26, 1999.

Everett, Senior Judge, filed opinion concurring in the result.

SULLIVAN, J., delivered the opinion of the Court, in which COX, C.J., and CRAWFORD and GIERKE, JJ., joined; EVERETT, S.J., filed an opinion concurring in the result.

For Appellant: *Captain Paul J. Perrone, Jr.* (argued); *Colonel John T. Phelps II, Lieutenant Colonel Michael L. Walters,* and *Major Leslie A. Nepper* (on brief); *Lieutenant Colonel Adele Odegard.*

For Appellee: *Captain Mary E. Braisted* (argued); *Colonel Russell S. Estey* (on brief); *Colonel Joseph E. Ross, Lieutenant Colonel Frederic L. Borch, III, Major Lyle D. Jentzer,* and *Captain Elizabeth N. Porras.*

Judge SULLIVAN delivered the opinion of the Court:

During June of 1996, appellant was tried by a general court-martial composed of officer and enlisted members at Aberdeen Proving Ground in Maryland. In accordance with her pleas, she was found guilty of attempted larceny, conspiracy to commit larceny, and knowingly making a false statement, in violation of Articles 80, 81, 121, and 134, Uniform Code of Military Justice, 10 USC §§ 880, 881, 921, and 934, respectively. She was sentenced to a bad-conduct discharge, total forfeitures, and reduction to the grade of E–1. On September 10, 1996, the convening authority approved the sentence but suspended execution of one-third forfeiture of pay until appellant was placed on involuntary excess leave. The Court of Criminal Appeals, on November 19, 1997, affirmed the findings of guilty and so much of the sentence as provided for the punitive discharge, forfeiture of two-thirds pay per month until execution of the discharge, and the reduction to E–1.

On April 28, 1998, this Court granted review of the following question of law:

WHETHER APPELLANT'S PLEA TO ATTEMPTED LARCENY IS IMPROVIDENT BECAUSE THE PLEA WAS

BASED ON AN INADEQUATE FACTUAL PREDICATE IN THAT THE ACTS ADMITTED TO ARE INSUFFICIENT TO ESTABLISH MORE THAN MERE PREPARATION.

On September 30, 1998, we granted review of the following supplemental issue:

WHETHER THE APPLICATION OF ARTICLE 57(a)(1), UCMJ, 10 USC § 857(a)(1), VIOLATES THE *EX POST FACTO* CLAUSE OF THE UNITED STATES CONSTITUTION WITH RESPECT TO APPELLANT.

In light of this Court's decision in *United States v. Schoof,* 37 MJ 96, 103 (1993), we hold that appellant's pleas of guilty to attempted larceny were provident. On the second issue, a majority of this Court has resolved it in appellant's favor, but nonetheless affirms the decision of the appellate court below. *See United States v. Gorski,* 47 MJ 370, 375 (1997); *cf. Id.* at 376–77 (Sullivan, J., concurring in part and in the result).

A stipulation of fact was agreed to by appellant and admitted into evidence. It stated:

Specialist JUANA L. SMITH (SPC SMITH) is an Administrative Clerk for Headquarters and Headquarters Company, 16th Ordnance Battalion, 61st Ordnance Brigade, U.S. Army Ordnance Center and School, Aberdeen Proving Ground, Maryland (HHC 16th Ord Bn). In the course of her duties she is entrusted with the care and control of the personnel data cards for the Weapons Department of HHC 16th Ord Bn. These data cards contain confidential information about the soldiers in the Weapons Department of HHC 16th Ord Bn, including their Social Security numbers, birthdates, past units of assignment, and other related information.

In early 1995, SPC SMITH overheard a conversation between her cousin NIKIA SMITH and NIKIA'S friend ANNETTE, about how to apply for credit cards from Central Fidelity Bank (CFB) in Richmond, Virginia, using fake names, and other people's personal and job information. SPC SMITH devised a scheme to order credit cards from CFB using fake names and the personal and job information of other soldiers in HHC 16th Ord Bn which she could get from their personnel data cards. SPC SMITH was having financial problems, and planned to use the credit cards to make purchases for herself and her son.

\* \* \*

During September 1995, MS. CARR, an acquaintance of SPC SMITH, told SPC SMITH's friend, MICHELE D. MCNAIR (MICHELE), how she had obtained a credit card from CFB using a fake name and false information. SPC SMITH and MICHELE planned together to order a credit card from CFB using a fictitious name and the personal and job information of soldiers in the Weapons Department HHC 16th Ord Bn. It was the intention of SPC SMITH and MICHELE, upon receiving the credit card, to make purchases using the credit card, without ever paying CFB for the items charged to the account.

A couple of weeks later, SPC SMITH went through the NCOER book of the Weapons Department of HHC 16th Ord Bn and selected the social security number of SSG KATHY SMITH (SSG SMITH). SPC SMITH decided to use SSG SMITH's name because it was similar to her own. SPC SMITH got her cousin's birthdate, a business address from a sign she saw at Aberdeen Proving Ground, and wrote all of this information down on an index card. *SPC SMITH then gave the index card to her friend MICHELE, and told MICHELE to call CFB and apply for a credit card.*

*On 29 September 1995, MICHELE telephoned CFB from a pay phone at Aberdeen Proving Ground and applied for a Visa credit card. Later in the day, SPC SMITH called MICHELE to confirm that MICHELE had placed the credit card application.*

On 6 October 1995, MICHELE called CFB to check on the status of their credit card application and spoke to RHONDA BLOUNT, who told her that the application looked promising. Later in the day, SSG SMITH received a phone call from RHONDA BLOUNT at CFB about the

credit card application that MICHELE had ordered under SSG SMITH's name. SSG SMITH then told RHONDA BLOUNT that she had never ordered any credit card from CFB and canceled the application. Had SPC SMITH and MICHELE been successful in getting a credit card under SSG SMITH's name, they would have made purchases using that credit card without ever paying CFB for the items charged to the account.

The military judge questioned appellant about her understanding of why she was guilty of the attempted larceny charge based on the above facts. The record states:

MJ: Okay. Let's look at the first charge, which is the attempted larceny, and this one alleges that on or about 6 October 1995, you attempted to commit the offense of larceny, and what are the facts relating to this particular offense?

ACC: It's—the—where—

MJ: Or is that the same thing we were just talking to—about the conspiracy?

ACC: Yes, sir.

MJ: Okay. I understand. So you and Michele entered into an agreement where she was going to call, and then in fact she did call?

ACC: Yes, sir.

MJ: And for some reason that you don't know, the bank caught on?

ACC: Yes.

MJ: Okay, so, the charge is written in such a way it says that you did at or near Aberdeen Proving Ground. It appears to me that the theory that the Government is pursuing in this case is that you are responsible for the act of Michele in making this phone call because you were co-conspirators, and one co-conspirator is responsible for the acts of another co-conspirator if the act is committed during the course of the conspiracy and while you're still a

member of that conspiracy. Did you and your defense counsel talk about that?

ACC: Yes, sir.

MJ: Okay. And do you understand that?

ACC: Yes, sir.

MJ: Okay. So then with regard to the attempt, what you've told me is that, as part of this conspiracy, Michele made a phone call to get the credit card, it was done with the specific intent to get the credit card, so that either you or Michele could purchase items with the credit card and not pay the bank back. Is that right?

ACC: *Yes, sir.*

MJ: *And that the act of calling was more than mere preparation; that is, it was a step towards committing the crime, is that correct?*

ACC: *Yes, sir.*

(Emphasis added.)

———

Appellant was charged with and pleaded guilty to attempted larceny "on or about 6 October 1995, [by] attempt[ing] to steal some money, the property of Central Fidelity Bank, Richmond, Virginia," in violation of Article 80.[1] For the first time, before the Court of Criminal Appeals, she attacked her pleas to attempted larceny on the basis that she did not admit sufficient facts to legally support her guilty pleas to this offense. She relied most heavily on this Court's decisions in *United States v. Byrd,* 24 MJ 286 (1987), and *United States v. Presto,* 24 MJ 350 (1987), and argued that her admitted conduct did not constitute "substantial steps amounting to more than mere preparation" to commit the crime of larceny. Final Brief at 7.

Appellant, before this Court, again argues that, under our case law, her admitted conduct was legally insufficient to constitute an attempt to steal money from Central Fidelity

1. Article 80 provides:

    (a) *An act, done with specific intent to commit an offense under this chapter, amounting to more than mere preparation and tending, even though failing, to effect its commission, is an attempt to commit that offense.*

    (b) Any person subject to this chapter who attempts to commit any offense punishable by

this chapter shall be punished as a court-martial may direct, unless otherwise specifically prescribed.

    (c) Any person subject to this chapter may be convicted of an attempt to commit an offense although it appears on the trial that the offense was consummated.

(Emphasis added.)

Bank. She particularly contends that her confederate's telephone call applying for the bank credit card left too many steps uncompleted before an actual taking of money from the bank could occur. *See Byrd, supra* at 290. She notes that they "still had to obtain the credit card, take the credit card to a store, pick out items to buy, and then present the credit card for payment." Final Brief at 6. She also cites this Court's decision in *United States v. Church,* 32 MJ 70, 72 (1991), for the proposition that an attempt requires an act that would ordinarily result in the commission of the crime, "but for the intervention of some extraneous factor." Finally, she cites *United States v. Presto, supra,* for the proposition that phone calls showing an intent to commit a crime are no more than preparation as a matter of military law.

We note that in *United States v. Schoof, supra,* a case decided after *Presto* and *Byrd,* this Court recognized the different approaches to determining when an illegal attempt to commit a crime has occurred. Judge Wiss, writing for the Court, acknowledged that no "litmus test for distinguishing 'preparation' from 'attempt'" existed in our case law. He also recognized that a "twilight zone" may exist between the two, where it may not be clear under the various tests whether an attempt has occurred. Nevertheless, he stated for the Court:

> Quite simply, where an accused pleads guilty and during the providence inquiry admits that he went beyond mere preparation and points to a particular action that satisfies himself on this point, it is neither legally nor logically well-founded to say that actions that may be ambiguous on this point fall short of the line "as a matter of law" so as to be substantially inconsistent with the guilty plea. Art. 45(a), UCMJ, 10 USC § 845(a).

37 MJ at 103.

Turning to appellant's case, we initially note that she pleaded guilty to attempted larceny of bank funds from Central Fidelity Bank. Moreover, she was specifically advised as to the "mere preparation" and "sub-

stantial step" distinction in the law of attempt, but she insisted that her conduct amounted to more than mere preparation. Finally, she specifically pointed out to the trial judge the action that went beyond mere preparation, *i.e.,* her confederate's phone call to the bank falsely applying for the credit card. Clearly, the more recent *Schoof* test for determining valid guilty pleas in attempt cases was satisfied here.

In addition, we conclude that appellant's admissions in their entirety show a substantial step toward the commission of the charged crime of larceny. *See Church,* 32 MJ at 74 (Sullivan, C.J., concurring). This was not a case of a simple exploratory phone call to inquire about a possible means to commit a crime. *Cf. Presto,* 24 MJ at 352. Appellant admitted that she alone had previously devised and executed a particular scheme to falsely obtain a credit card from that same bank and used it to make purchases.[2] Also, to continue her scam, she gave Michele McNair unauthorized military personnel information to acquire a second credit card from this same bank. *Id.* Finally, her admitted actions, in directing her confederate to make the application call and then later ensuring it was made, amply demonstrated her unequivocal criminal intent to commit larceny. *Cf. Byrd,* 24 MJ at 290. Thus, while several steps remained for the completion of the larceny, we conclude that execution of the gravamen of this crime clearly went beyond "mere preparation." *See also Church, supra* at 73 (accused did everything he thought necessary and possible to make enterprise successful).

The decision of the United States Army Court of Criminal Appeals is affirmed. Execution of the forfeitures and reduction prior to the date of the convening authority's action is hereby declared to be without legal effect. Any forfeitures collected prior to that date, and any pay and allowances withheld because of the premature reduction in grade, will be restored. The record of trial is returned to the Judge Advocate General of the Army for appropriate action.

---

2. Appellant pleaded guilty to an earlier larceny from this same bank by her use of a credit card

which she alone fraudulently acquired over the phone.

EVERETT, Senior Judge (concurring in the result):

I concur in the conclusion that appellant's pleas were provident. However, I reach that result by a slightly different route. In my view, the facts relayed in the stipulation would be insufficient to establish guilt if only appellant had been involved. Mere preparation, rather than an attempt, would be proven. *Cf. United States v. Byrd,* 24 MJ 286 (CMA 1987); *United States v. Presto,* 24 MJ 350 (CMA 1987). *Byrd* also makes clear that, if the stipulated facts show no more than preparation, a plea of guilty predicated on that stipulation is improvident and must be set aside.

In this case, however, the stipulation reveals that not only appellant, but also another soldier was involved in the larcenous scheme. Indeed, the same stipulation was the basis for appellant's pleas of guilty to conspiracy to commit larceny—the same larceny that was the subject of the attempt. Where a conspiracy has been entered to commit a crime, and acts have been performed by the conspirators to achieve the criminal purpose of the conspiracy, a conspirator who personally has committed some of these acts may be guilty of an attempt, even though these same acts might be insufficient to constitute an attempt if no conspiracy was involved. To me, the agreement with another to commit a crime has great significance in itself for the purpose of demonstrating that someone has moved beyond "mere preparation" to attempt. Certainly, the agreement evidences the seriousness of criminal purpose on appellant's part.

Under § 5.05(3) of the ALI Model Penal Code, conspiracy and attempt are both inchoate crimes, and an accused may not be convicted of both a conspiracy and an attempt when their purpose was the same. *See* ALI Model Penal Code and Commentaries 484 (1985). Military justice prescribes no such flat prohibition against conviction for both the conspiracy and the attempt. Moreover, no issue of multiplicity has been raised, and even if appellant's convictions of both conspiracy and attempt were multiplicious, any effect thereof on sentence would be unlikely. Accordingly, I concur in the judgment.