UNITED STATES, Appellee,

v.

Specialist Four Keith A. CLARK, 059–46–8857, United States
Army, Appellant.

ACMR 8700641.

U.S. Army Court of Military Review.

29 April 1988.

For Appellant: Luther C. West, Esquire (argued); Captain Donna L. Wilkins, JAGC (on brief).

For Appellee: Captain Patrick D. O'Hare, JAGC (argued); Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC (on brief).

Before HOLDAWAY, De GIULIO, and CARMICHAEL, Appellate Military Judges.

## OPINION OF THE COURT

CARMICHAEL, Judge:

The appellant pled guilty to two specifications of wrongfully distributing cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp.III 1985) [hereinafter UCMJ]. The military judge, sitting as a general court-martial, determined that the appellant's pleas were provident and entered guilty findings to both specifications and the charge. The military judge subsequently sentenced the appellant to a dishonorable discharge, confinement for twelve years, and reduction to Private E-1. The convening authority reduced the confinement to ten years pursuant to a pretrial agreement and approved the modified sentence.

During the sentencing phase of the trial, the military judge concluded that testimony of a government witness concerning telephone calls made by a government informer, Mr. Greene, to the appellant required further inquiry. Although the testimony did not raise the defense of entrapment, it did raise the possibility that the defense might be available. Accordingly, the military judge initiated the following colloquy with the civilian defense counsel to determine whether there was an issue affecting the providence of the appellant's pleas:

Military Judge (MJ): Okay, ... on this subject of telephone calls, to which this witness gave some testimony, I want [to] ask, is the defense satisfied that in fact there is no issue of entrapment in this case?

Civilian Defense Counsel (CDC): Your Honor, not an issue that ... would be used for guilt or innocence.... [C]learly this is something that we intend to argue for mitigation, and sentencing.

MJ: Is the fact that it was necessary—or that [the accused] was called back [by telephone], but for being called back—

CDC: That is—

MJ: [—it] wouldn't have happened?

CDC: That is one of the factors that we intend to enter, that we eventually intend to present to the court today.

MJ: But you are satisfied that the fact that he was called and came back is not a sufficient factor so as to constitute a defense of entrapment then?

CDC: Your Honor, I think that—we anticipate the counterargument of predisposition of the [accused]. We are not—I think we have gone over that issue in detail with the accused, and knowing that—knowing all the factors therein, he has agreed to plead guilty to the Charge. I feel the issues surrounding the general framework of entrapment are still very relevant as mitigating factors for consideration by this court in sentencing.

MJ: But you are satisfied that there was a predisposition which would preclude at least a viable or successful assertion of entrapment.

CDC: Your Honor, we are convinced that it would be—it would be certainly a very arguable position on the part of the Government.

MJ: Well, the standard with regard to the guilty plea[,] of course, is that if there is in fact a defense to the offense, that then the guilty plea cannot be accepted; so if in fact there is a defense of entrapment, I could not accept the guilty plea. But the defense has certainly had a much greater opportunity to investi-

'gate that matter than I have, and you are certainly more familiar with all the facts and circumstances in this case than I am, so if you are satisfied that in fact the circumstances are not such that a defense of entrapment exists, why that is all I would require.

CDC: I feel that a defense of entrapment, and I think this is what we have discussed with the accused in detail, of entrapment based on military law, successful enough to defeat the charges ... is not sufficient, Your Honor, to render a not guilty verdict ... Again, I don't want to indicate to the court that we don't consider this something that the court would deem relevant for sentencing and possibly in mitigation and that is the partial basis for the line of questioning that we have developed.

MJ: But just so you understand now, the test is not whether the defense could win on the issue. If the defense is there, then it is a bar to a guilty plea [w]hether the jury would be convinced of the defense or not. You are satisfied that that is not—

CDC: We are satisfied that the jury would not be convinced, Your Honor, of an adequate—to constitute the defense as set out.

MJ: Okay, and you are satisfied specifically with regard to that, that the accused at the time ... did have a predisposition which would preclude a successful entrapment defense?

CDC: Your Honor, I think that is a basis for the Stipulation of Fact, indicating ... [five] prior transfers to Mr. Greene. That is what the Government insisted in putting ... in to preclude us from arguing ... [entrapment], just quite candidly with the court.

MJ: Okay. I guess having resolved that matter then, is there anything further by either side of ... [this witness]?

Although he addressed no questions directly to the appellant, the military judge was satisfied by the civilian defense counsel's responses that the defense of entrapment was precluded by the appellant's predisposition to distribute cocaine. Following this inquiry by the military judge, the defense called the government informer, Mr. Greene, to testify on behalf of the appellant.

Greene, a former soldier who previously had been convicted and confined for drug offenses, made "about four" long distance telephone calls to the appellant in an effort to set up a drug transaction. On 25 October 1986, Greene flew from New York to Nashville, Tennessee, where the appellant picked him up at the airport. At that time, the appellant did not have the cocaine that Greene had requested during their telephone conversations. The next day—26 October—Greene called the appellant and asked him to bring cocaine to the motel where Greene was staying. The appellant appeared, but without cocaine. After reiterating his request for cocaine, Greene gave the appellant approximately $1,800.00 to purchase one ounce of the substance. Greene subsequently called the appellant once or twice on the afternoon of 26 October to determine if he had obtained the cocaine. On the evening of 26 October, the appellant returned and gave Greene the cocaine. This was the first of the two distributions to which the appellant pled guilty.

The second distribution of cocaine was set up by Greene and occurred on 30 October. Greene introduced the appellant to an undercover agent of the Criminal Investigation Division (CID) on that date. The appellant sold a $25.00 bag of cocaine to the agent, keeping $10.00 for himself and giving Greene $15.00. Greene testified that he had "dealt in drugs" with the appellant on at least five occasions during the period of August through November 1986. Further, that the appellant willingly became involved in the cocaine transactions, that the appellant had not been subjected to coercion, threats, or chicanery, and that, while the appellant was apprehensive, his apprehension stemmed from military law enforcement agents asking questions about him of his apartment manager.

The appellant also testified during the sentencing phase. He admitted that he had supplied Green with cocaine on some

five occasions. The appellant knew a drug source who would not deal with Greene, so when Greene wanted cocaine he would give money to the appellant. The appellant would make the purchase from the source, a soldier named Johnson, and then give the cocaine to Greene. Greene, in turn, would sell the cocaine for a profit and split the money with the appellant. The appellant testified that he had made $25.00 per transaction in his five drug transactions with Greene. He and Greene were friends and had used cocaine together.

However, the appellant's and Greene's testimony differ markedly as to the appellant's predisposition when Greene first started calling him from New York. The appellant, by his account, resisted Greene's requests to obtain an ounce of cocaine. Despite repeated telephone calls, he told Greene that he already was in trouble and did not want to "mess around." The appellant had no intention of getting involved in a drug transaction, but finally told Greene he would attempt to get the cocaine because he "just got tired of [Greene's] nagging." Later, after Greene had flown from New York to Tennessee, he kept telling the appellant about taking care of people who got in his way, and that "his crew from New York was ready to come down." This led the appellant to speculate whether Greene would "mess" with him if he did not try to get the cocaine. Still, the appellant acknowledged that he and Greene generally had a good relationship.

The appellant also testified: (1) that Greene gave him some cocaine which he then divided into three or four $25.00 packets; (2) that it was one of these $25.00 packets that he sold to the CID undercover agent on 30 October; (3) that he and Greene, while driving around together after the 30 October transaction, had used cocaine from the three remaining $25.00 packets prepared by the appellant; (4) that he was knowledgeable about the drug trade to include the pricing and packaging of unlawful drugs; and (5) that he was not a "consistent" drug dealer.

At the conclusion of the defense's evidence, the military judge made no further inquiry concerning the providence of the appellant's pleas. In making argument on the sentence, the civilian defense counsel, consistent with his prior representations to the military judge, argued that the "side issue of entrapment" was the "most significant mitigating factor."

■ The appellant now asserts that, because the defense of entrapment was raised by the trial testimony, the military judge erred in failing to reject his guilty pleas as improvident. We disagree.[1]

■ The touchstone in military law for determining the providence of a plea is Article 45(a), UCMJ, 10 U.S.C. § 845(a). The standard established is the strictest in the federal justice system. Ostensibly, it precludes a military accused from pleading guilty if he raises matter inconsistent with his plea. If an accused raises such matter at any time during trial before the announcement of a sentence, the military judge, *sua sponte*, must make further inquiry into the providence of the plea. If, after such inquiry, the military judge believes the plea is improvident, he will enter a plea of not guilty on behalf of the accused. UCMJ art. 45(a); Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 910(h)(2) [hereinafter M.C.M., 1984 and R.C.M., respectively] (this subsection of the rule is partly based on Article 45). Thus, unlike a civilian criminal defendant before a federal district court, a military accused who denies his guilt cannot enter a provident plea of guilty. Fre-

1. Mr. West, who represented the appellant before this court in oral argument but not at trial, framed the issue as follows:

May a military accused who feels he has an entrapment defense, and who has evidence to support such a defense, nonetheless plead guilty simply because he and his counsel feel that the prosecution's evidence of the accused's predisposition to use, possess and transfer cocaine would factually overcome the entrapment defense in the eyes of the jury; and secondly, may counsel for such an accused raise the issue of entrapment following a guilty plea in mitigation of punishment? We are satisfied that our opinion adequately addresses the issue thusly framed by the appellant's civilian counsel.

quently, the issue of whether a plea of guilty is provident or improvident is anything but clear. The military judge is caught between Scylla and Charybdis and must chart his passage carefully; not only will he be reversed if reviewing authorities decide that he erroneously accepted an improvident plea, but he will suffer the same fate if he arbitrarily rejects a provident plea.[2] *See United States v. Penister,* 25 M.J. 148 (C.M.A.1987) (military judge rejected provident plea because of misapplication of the law).

Turning to the facts of the instant case, the critical issue is whether the affirmative defense of entrapment was credibly raised during the sentencing phase of the appellant's trial. The applicable test is whether the testimony of the witnesses and the appellant "reasonably raised" the entrapment defense. *See United States v. Logan,* 47 C.M.R. 1, 2 (C.M.A.1973) (quoting *United States v. Timmins,* 45 C.M.R. 249, 253 (C.M.A.1972)); *United States v. Clayton,* 25 M.J. 888, 889 (A.C.M.R.1988). However, the mere "tactical possibility of raising a defense," standing alone, does not warrant rejection of an otherwise provident plea. *Logan,* 47 C.M.R. at 3. Military case law measures the viability of the entrapment defense subjectively rather than objectively. *See United States v. Meyers,* 21 M.J. 1007, 1011–1012 (A.C.M.R.1986), *citing, United States v. Vanzandt,* 14 M.J. 332 (C.M.A.1982). As we stated in *Meyers,* "[w]e believe the controlling element under military decisional law for subjectively measuring entrapment is predisposition." *Meyers,* 21 M.J. at 1012. " 'Consequently, the focus of the defense is not upon the Government agent but upon the accused,' " and the accused's predisposition to commit the offense. *Vanzandt,* 14 M.J. at 343 (quoting *United States v. Garcia,* 1 M.J. 26 (C.M.A.1975)).

Here, there is ample evidence that the appellant was predisposed to commit the distribution offenses to which he pled guilty. He had been involved in a number

of cocaine distributions with Mr. Greene before Greene became a government informer. Moreover, his involvement in these cocaine transactions had been voluntary and he had profited from each of them. Although, with respect to the two offenses of which he stands convicted, the appellant portrayed himself as a reluctant participant who finally yielded to Greene's nagging and veiled threats, his testimony does not entirely support this sympathetic self-portrayal. Even while attempting to rationalize his criminal conduct, the appellant acknowledged that he and Greene were friends and maintained a cordial relationship during the period the offenses were committed. Further, the appellant's testimony did not contravene but corroborated the following relevant facts: He obtained cocaine for Greene the day after he picked him up at the airport; he not only accepted some of the cocaine that he had acquired for Greene, but then packaged it for distribution; and several days later he sold one of these packets of cocaine for $25.00.

In his concurring opinion in *United States v. Penister,* Judge Cox forcefully writes against applying Article 45, UCMJ, in such a formalistic manner that a plea is vitiated by nothing more than the proclivity of human beings to rationalize their misconduct:

> Often an accused is reluctant to admit to a particular aspect of an offense. However, that should not vitiate his guilty plea if he recognizes that the evidence against him will prove the point, and he admits his guilt to the offense.
>
> We should not overlook human nature as we go about the business of justice. One aspect of human beings is that we rationalize our behavior and, although sometimes the rationalization is 'inconsistent with the plea,' more often than not it is an effort by the accused to justify his misbehavior.

*Penister,* 25 M.J. at 153.

 The military judge in this case realized early-on during the sentencing

---

2. Had the military judge found the negotiated plea in this case to be improvident, thereby nullifying the pretrial agreement in the face of overwhelming government evidence of guilt, the appellant conceivably now would be asserting the contrary position: that the judge erred by *improperly rejecting his guilty pleas.*

phase of the trial that there was a question of an affirmative defense. As he was bound to do by Article 45 and military case law, he made a more searching inquiry to determine whether the appellant was asserting a position inconsistent with his pleas of guilty. The military judge directed his inquiry solely to the appellant's civilian defense counsel.[3] Based on the civilian defense counsel's responses, it is clear that counsel and the appellant had discussed the defense of entrapment and, after weighing the evidence, had decided that because of abundant evidence of predisposition it was not a credible legal defense. We, like the trial judge, find no reason to quarrel with this conclusion. *See United States v. Watkins*, 29 C.M.R. 427, 430 (C.M.A.1960), *citing, United States v. Hinton*, 23 C.M.R. 263 (C.M.A.1957).

Having carefully considered the totality of the circumstances in the case *sub judice*, we hold that the evidence of the appellant's predisposition to commit the charged offenses was so overwhelming that the defense of entrapment was not a credible defense. The appellant had been involved in distributing cocaine before the government approached him. His hesitation about again becoming involved in a drug transaction was brief. There was no unlawful inducement on the part of the government. The evidence, as we view it, simply fails to show an unwillingness on the part of the appellant to commit the offenses. Rather, it shows a wary drug dealer—the appellant—being afforded and quickly grasping the opportunity to continue trafficking in cocaine. Evidence of opportunity is not evidence of inducement. *United States v. Emerson*, 46 C.M.R. 667, 669 (A.F.C.M.R.), and the cases cited therein, *petition denied*, 46 C.M.R. 1323 (C.M.A. 1972). Because the appellant grasped that opportunity and was not induced by the government to do so,[4] the defense of entrapment is beyond his reach.

■ Assuming *arguendo* that the defense of entrapment was credibly raised by the appellant's testimony, we still find that the military judge did not abuse his discretion in failing to set aside the pleas. As we already have stated, we agree with Judge Cox that appellate courts must not construe Article 45 so strictly that trial judges are in effect precluded from distinguishing between inconsistent matter and creative rationalizations when deciding whether a

---

**3.** When further inquiry into the providence of a plea is required because of inconsistent matter, the military judge should question the accused as well as his defense counsel. This will assure that sufficient additional information is developed to aid the judge in resolving the issue, while simultaneously establishing the basis for the trial judge's decision on the record. If, based on the responses, it becomes necessary to explore a possible defense, the military judge is "well advised" to explain the elements of the defense to the accused. *See United States v. Jemmings*, 1 M.J. 414, 418 (C.M.A.1976); *see also United States v. Johnson*, 25 M.J. 553, 554* (A.C. M.R.1987) (guidance concerning the explanation and inquiry a military judge should make of an accused when a possible defense is suggested). Once having developed a sufficient factual predicate upon which to rest his decision, the military judge should conclude by making a finding clearly setting forth that decision. *See United States v. Penister*, 25 M.J. at 153 (Cox, J., concurring).

We note that the Air Force Court of Military Review, on facts similar to those in the instant case, held that the trial judge erred in accepting the accused's guilty plea without first *inquiring of the accused* his attitude on a potential affirmative defense. *United States v. Collins*, 17 M.J. 901, 903 (A.F.C.M.R.1983), *petition denied*, 18 M.J. 292 (C.M.A.1984).* Here, assuming *arguendo* that the military judge erred by limiting his inquiry to the appellant's counsel, we find the error harmless. *Cf. United States v. Fisher*, 21 M.J. 327, 328–29 (C.M.A.1986) (plain error doctrine).
* Corrected.

**4.** Succinctly stated, the evidence is insufficient to raise entrapment as a credible defense because it does not show inordinate government inducement directed toward an accused who lacked the predisposition to commit the offenses charged.

Although mindful of the Court of Military Appeals' decision in *United States v. Bailey*, 21 M.J. 244 (C.M.A.1986), we believe *Bailey* is distinguishable from this case. In *Bailey* the trial judge and defense counsel concluded that the defense of entrapment was negated on the "basis of an erroneous legal premise." *Id.* at 246. However, in the instant case, both the military judge and the defense counsel demonstrated on the record their understanding of the subjective theory of entrapment, to include the significance of the appellant's acknowledged predisposition *to distribute cocaine*.

plea is provident. But military appellate courts also must recognize that judge alone trials are significantly different from those with members. If this had been a contested case before members and the defense of entrapment had been raised, without question the military judge would have been required to instruct the members on the defense.[5] Failure to do so would have been reversible error. Once raised, the merits of a defense are for the trier of fact. But in the instant case, the appellant requested trial by military judge alone. Therefore, it was the military judge who was the arbiter of both the law and the facts. Although the appellant pled guilty, the military judge was an experienced trier of fact, and certainly that experience came into play in evaluating the viability of an entrapment defense within the overall evidentiary posture of the case.

After his initial dialogue with the civilian defense counsel about a possible entrapment defense, the military judge, in his fact-finding capacity, heard nothing which made him question counsel's professional judgment. Despite the possibility of a conflict between some of the appellant's testimony and the pleas, the military judge made no further inquiry as to providence. We do not see this as benign neglect on the judge's part, but a judicial determination that the later evidence was consistent with the tactically sound reasons initially given by counsel for not pursuing an entrapment defense. Under these circumstances, where the trial was before a military judge alone, there were negotiated pleas, the accused, although raising the possibility of a defense, admitted his guilt, the accused and his counsel considered the defense and decided it could not be effectively asserted, we hold that the military judge did not abuse his discretion in accepting the pleas as provident.

We find the assigned error, as well as the issue personally asserted by the appellant, to be without merit.

The findings of guilty are affirmed. Further, having discovered no matters in the record indicating that the appellant's sentence is inappropriate, the sentence is affirmed.

Senior Judge De GIULIO concurs.

HOLDAWAY, Chief Judge, concurring:

I concur in the result. The evidence of predisposition is overwhelming. Had the military judge rejected the plea out of an "abundance of caution," there is only a minuscule chance, and that states the case generously, that the appellant would have been acquitted. He would now be before us urging that he was wrongfully deprived of his pretrial agreement. *Penister*, 25 M.J. at 148. The term "matter inconsistent with his plea" as used in Article 45, UCMJ, must be interpreted with common sense. Thus in this case, while there is, admittedly, evidence of government inducement, the criminal predisposition of the appellant is so abundantly clear that a verdict to acquit would have been unlikely, perhaps even unreasonable, in face of the evidence. Under these circumstances an overly strict interpretation of Article 45 serves neither the appellant nor the system. This was the gist of Judge Cox's concurring opinion in *Penister;* a view I think both legally and logically sound.

One other matter warrants discussion. It has been the appellate rule for a long time that the defense of entrapment is a matter inconsistent with a plea of guilty as defined by Article 45. As I read the cases that fact has been assumed but never critically analyzed. Certainly the principle of *stare decisis* constrains me, as an intermediate appellate judge, to uphold those decisions. However I now set forth, for whatever value it may be, an analysis that casts doubt on the correctness of this rule. Simply put it is this: The defense of entrapment is not a defense that negates any element of the offense charged. It is a

---

5. "As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." (Citations omitted.) *Mathews v. United States,* — U.S. —, —, 108 S.Ct. 883, 887, 99 L.Ed.2d 54 (1988).

defense in the nature of confession and avoidance or estoppel. As such it is similar to defenses based on the statute of limitations or former jeopardy, both of which defenses can be waived. R.C.M. 907. If the only defense is entrapment,[6] and the accused attempts to plead guilty, he nonetheless can admit, and be provident, to each element of the offense charged. Entrapment merely seeks to avoid the consequences of the criminal act because of governmental misconduct. I would therefore conclude that under these circumstances a claim of entrapment does not set up matters inconsistent with guilt. If this issue were being presented for the first time, I would fashion a rule that would interpret Article 45 so that the term "matter inconsistent with his plea" means a matter that negates one or more of the essential elements of the crime as defined by the specification. I would permit an accused to waive defenses such as entrapment that did not refute an accused's criminality.

---

6. There may be cases, unlike the one under consideration, where an accused has more than one defense, *e.g.* "I'm not the one who did it, but in any event the one who did it was entrapped."