**UNITED STATES, Appellee,**

v.

**Private First Class Byron T. BROOKS, 218–78–5310, United States Army, Appellant.**

**ACMR 8800220.**

U.S. Army Court of Military Review.

4 Aug. 1988.

Reconsideration En Banc Denied 7 Sept. 1988.

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Kathleen A. VanderBoom, JAGC, Captain Jeannine C. Hinman, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Captain Gary L. Hausken, JAGC, Captain Jonathan F. Potter, JAGC (on brief).

Before ADAMKEWICZ, LYMBURNER, and SMITH, Appellate Military Judges.

### OPINION OF THE COURT

SMITH, Judge:

Appellant was convicted, pursuant to his pleas, of conspiracy to distribute marijuana and wrongful distribution of marijuana and psilocybin mushrooms, containing psilocin (a Schedule I controlled substance), in violation of Articles 81 and 112a, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 881 and 912a, respectively. Before this court, he argues that his pleas were improvident, asserting that the military judge failed to resolve matters inconsistent with his pleas.

The military judge advised the accused of his rights and ensured that the pleas were voluntary. Manual for Courts-Martial, United States, 1984, Rule for Courts-Martial 910(c) and 910(d) [hereinafter M.C.M., 1984 and R.C.M., respectively]. Further, he properly advised the accused of the elements of the charged offenses and established the factual basis for the pleas. *United States v. Care*, 40 C.M.R. 247 (C.M.A.1969); R.C.M. 910(e). During the in-

quiry, the accused related that, on 9 May 1987, he, Specialist Four (SP4) Burdine, and SP4 Willie went to a drug source known to him and obtained the marijuana and mushrooms in question. The accused related that his role in the distribution was the introduction of the buyer (Willie) to the seller (a civilian) and conceded that, under the law of principals, he was guilty of the charged distribution. The conspiracy charged occurred on 22 June when SP4 Burdine approached the appellant and asked him if they could go downtown to buy marijuana and "anything else" they could find for SP4 Willie. The appellant agreed and the two drove downtown in Willie's car. Appellant's drug source could not provide any drugs and, in spite of checking elsewhere, they could find no other source. Unknown to appellant, SP4 Willie was working with the Criminal Investigation Command (CID) on both occasions. Based on this factual predicate, the military judge accepted the pleas of guilty.

During the sentencing hearing, the accused in his unsworn statement related that his participation in the drug offenses resulted from harassment:

ACC: Prior to [9 May], both Spec Four Burdine and Spec Four Willie had been harassing me into going down there because they—When I first came back from Greely, Spec Four Burdine had came [sic] up to me and asked me if I knew anyone who sold drugs. I told him I did but I didn't want to mess with the stuff. He kept persisting with asking me and he had introduced me to Spec Four Willie and both of them had kept badgering me about it and I just got fed up with it.

DC: Did you know it was wrong?

ACC: Yes, sir.

DC: But you still did it?

ACC: Just to get them off my back, sir.

. . . .

DC: Why did you do it again on the 22d?

ACC: They still kept doing it, saying, come on; just one more time, just one more time and I'll leave you alone, and I finally agreed. I said, okay, one

more time but after this don't even think of asking me any more.

Alerted by these remarks, the military judge queried defense counsel:

MJ: Have you investigated thoroughly the issue of entrapment in this case?

DC: Yes, sir, I have.

MJ: Well, the accused, although it's an unsworn statement, which means we can't ask him any questions, but he has indicated that he has been badgered into distributing drugs to a CID agent. Now, if he had no intention of distributing drugs until the CID badgered him into doing it, you could have entrapment.

DC: I understand that, sir.

MJ: But you're convinced that that is not an issue?

ACC[sic]: Yes, sir, I talked with PFC Brooks about it on numerous occasions. Yes, sir.

MJ: Okay, and he will acknowledge that also, that he was not badgered as an unknowing distributor by the CID?

DC: I believe so, yes, sir.

The military judge, presumably as a result of his concern about cross-examining an unsworn statement, never directed an inquiry on entrapment to the accused.

■ "If an accused ... after a plea of guilty sets up matter inconsistent with the plea, ... a plea of not guilty shall be entered in the record, and the court shall proceed as though he had pleaded not guilty." UCMJ art. 45, 10 U.S.C. § 845. This statutory mandate requires that, if an accused raises matter inconsistent with his guilty plea, the military judge further inquire into the providence of the plea. *United States v. Clark*, 26 M.J. 589, 592 (A.C.M.R.1988); R.C.M. 910(h)(2). In this case, the argued inconsistency arose during the unsworn statement by the accused. Rule for Courts–Martial 1001(c)(2)(C) provides that "[t]he accused may make an unsworn statement and may not be cross-examined by the trial counsel upon it or examined upon it by the court-martial." Apparently, the military judge felt constrained by R.C.M. 1001(c)(2)(C) to limit his inquiry on the possible defense of entrap-

ment to defense counsel, fearing that questioning the accused would constitute prohibited cross-examination on an unsworn statement. In this conclusion the military judge erred. While the net result of reopening the *Care* inquiry and directing questions to the accused on a potential defense might be characterized as cross-examination, the military judge is not only empowered but indeed required to conduct such an examination when the accused in his statement, unsworn or otherwise, raises matters inconsistent with his guilty plea.

■ The issue then becomes whether the accused did indeed raise matters inconsistent with his pleas sufficient to require reopening the *Care* inquiry. The "tactical possibility of raising a defense" alone is insufficient to require rejection of an otherwise provident plea. *See United States v. Logan*, 47 C.M.R. 1, 3 (C.M.A.1973). "[I]n order for an accused's statements to rise to the level of an inconsistency as contemplated by Article 45, UCMJ, the matter presented must reasonably raise a defense, not the mere possibility that a defense exists." *United States v. Clayton*, 25 M.J. 888, 890 (A.C.M.R.1988) (citations omitted). As this court has recently noted, when the defense is one of entrapment, it can be defeated by abundant evidence of predisposition. *Clark*, 26 M.J. at 594; *see also United States v. Higerd*, 26 M.J. 848, 850 (A.C.M.R.1988). Nevertheless, we must bear in mind that, "in deciding a providence issue, the sole question is whether appellant made a statement during the trial which was in conflict with his guilty plea. It is unnecessary that his statement be credible; instead, it only need be inconsistent." *United States v. Lee*, 16 M.J. 278, 281 (C.M.A.1983). *See also United States v. Johnson*, 25 M.J. 553 (A.C.M.R.1987). In this case, although we might doubt that an entrapped innocent will have knowledge of and access to a source willing to distribute drugs merely on introduction, the record is devoid of evidence of predisposition. "Accepting the accused's version at face value, as we must in determining the providence of his plea," *United States v. Jemmings*, 1

M.J. 414, 418 (C.M.A.1976), we find that the defense of entrapment was raised.

 In this case, the military judge did recognize the potential defense of entrapment and directed an inquiry to trial defense counsel, who denied the applicability of the defense. The final issue we face is whether it is sufficient for an accused's counsel to eschew a defense or whether the inquiry must be directed to the accused. We recognize that defense counsel now, as opposed to earlier periods in military justice, are fully qualified attorneys, UCMJ art. 27, 10 U.S.C. § 827; R.C.M. 502(d), held to the highest professional standards. Dept. of Army, Pamphlet 27–26, Legal Services–Rules of Professional Conduct for Lawyers (Dec. 1987) [hereinafter DA Pam 27–26]. For an attorney to fail to investigate a viable defense may constitute ineffective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984); *United States v. Scott*, 24 M.J. 186 (C.M.A. 1987). For an attorney to indicate to the trial judge that he investigated a claim when he had not would constitute professional misconduct. *See* DA Pam. 27–26; Rules 3.3, 8.4. Thus, we assume, in the absence of evidence to the contrary, that defense counsel did in fact discuss the defense of entrapment with the accused and determine that it was not available in this case. Nevertheless, the defense is not one for counsel to abjure. When a defense is raised, it is the *accused* who must speak for himself; it is not for his counsel to speak for him.

> [W]hen the military judge believes the accused has offered testimony which operates to set up matter inconsistent with his plea, in order to make the determination either to allow the plea to stand or to proceed to trial as if there had not been a guilty plea, the judge has an obligation to discover from the accused *his* attitude regarding the potential defense. The same reasoning which gave rise to the *Care* rationale renders inadequate the mere asking for defense counsel's conclusion. . . .

*United States v. Timmins*, 45 C.M.R. 249, 252 (C.M.A.1972) (emphasis in original). *See also United States v. Collins*, 17 M.J. 901 (A.F.C.M.R.1983), *petition denied*, 18 M.J. 292 (C.M.A.1984). When the military judge failed to address the appellant to confirm that entrapment was not a viable defense in this case, he committed error which requires reversal.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge ADAMKEWICZ and Judge LYMBURNER concur.