**UNITED STATES, Appellee,**

v.

**Private E2 Mark R. WILLIAMS, 552–57–4019, United States Army, Appellant.**

**ACMR 8701643.**

U.S. Army Court of Military Review.

18 Nov. 1988.

672

For Appellant: Michael A. Forscey, Esquire (argued); Captain Donald G. Curry, Jr., JAGC, Captain Harry Wallace, JAGC, (on brief).

For Appellee: Captain Jonathan F. Potter, JAGC (argued); Colonel Norman G. Cooper, JAGC, Major Gary L. Hausken, JAGC, (on brief).

Before MYERS, GILLEY and SMITH, Appellate Military Judges.

## OPINION OF THE COURT

SMITH, Judge:

Appellant was convicted, pursuant to his pleas, of distribution of marijuana (three specifications) and possession of marijuana in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp. IV 1986) [hereinafter UCMJ]. Before this

court, he argues, *inter alia*,[1] that his pleas were improvident, asserting that the military judge failed to resolve matters inconsistent with his pleas.

## I

During the providence inquiry appellant related that Sergeant (SGT) Smith (an informant for a Drug Suppression Team) approached him about obtaining marijuana. Sergeant Smith, who was formerly appellant's platoon sergeant, was the charge-of-quarters at the time. Appellant explained to the military judge that "at that time I was rather, you know—didn't know what to think. An NCO and all—especially, I was rather reluctant." After SGT Smith approached appellant a second time, appellant made a phone call to someone he knew was selling marijuana. The individual appellant called was not home. Sergeant Smith contacted appellant a third time. On this occasion (Specification 1 of the Charge), appellant and SGT Smith, accompanied by SGT Holmes (an undercover member of the Drug Suppression Team), went to an apartment in El Paso, Texas, just outside of Fort Bliss. Appellant entered the apartment, came out and provided SGT Holmes with 26.13 grams of marijuana.

Appellant related at trial that, after the initial distribution, SGT Holmes called him several times requesting marijuana. Appellant subsequently agreed to obtain the marijuana for SGT Holmes. Appellant, however, stated at trial: "I was still, you know, wasn't something, you know, I really wanted to do but they kept—they called me a couple of times. Sergeant Smith, I mean, Sergeant Holmes did—called me several times." On this second distribution, appellant acquired 28.62 grams of marijuana from the same supplier in El Paso. He subsequently distributed it to SGT Holmes (Specification 2 of the Charge). Three days later, after "at least five or six" phone calls, appellant obtained 42.34 grams of marijuana and distributed it to SGT

Holmes (Specification 3 of the Charge). Appellant was apprehended after the third distribution and was found in possession of 1.14 grams of marijuana (Specification 4 of the Charge) and a ten dollar bill from marked CID funds. Appellant claimed that he had not received any profit from the previous distributions but was given $10.00 by the supplier on this third purchase of marijuana.

During the inquiry, appellant reasoned that SGT Smith approached him about acquiring marijuana because SGT Smith may have heard from somebody "about [appellant] selling marijuana." Later during the inquiry, the military judge specifically asked appellant why SGT Smith would approach him. Appellant responded that he had smoked marijuana in the past and that someone with whom he had smoked marijuana may have said something.

During the sentencing phase of the trial, appellant, in an unsworn statement, emphasized the fact that SGT Smith was his first platoon sergeant and that he was "kind of reluctant at first" to get the marijuana. Appellant claimed that SGT Smith asked him on a "couple of occasions" to get the marijuana. Appellant also claimed that SGT Holmes was "rather persistent" about asking for marijuana and that he called appellant "every day just about." Appellant stated that SGT Holmes and SGT Smith were persistent, but did not "threaten [his] health or anything like that." In response to appellant's unsworn statement, the military judge asked both appellant and his defense counsel whether they had discussed the defense of entrapment. Appellant and defense counsel responded in the affirmative. The military judge specifically asked defense counsel whether his investigation in the case convinced him that the defense was not raised in appellant's case. The defense counsel stated that it was not.

The military judge made no further inquiry regarding the providence of appellant's pleas. The defense counsel, in the sentencing argument, told the court mem-

---

1. Because of our disposition of this case we do not address an issue of ineffective assistance of counsel raised by appellant.

bers that there was no entrapment defense in this case and that appellant was not "forced to do everything."[2] It appears that the defense counsel was not attempting to raise the defense of entrapment, but was trying to establish as a mitigating factor the fact that appellant was encouraged by a noncommissioned officer to engage in distribution of marijuana.

## II

Article 45, UCMJ, requires the military judge to reject an accused's plea if he raises matters inconsistent with the plea. *See also* Manual for Courts–Martial, United States, 1984, Rule for Courts–Martial 910(h)(2) [hereinafter M.C.M., 1984 and R.C.M., respectively] (if an accused makes a statement or presents evidence which is inconsistent with his plea of guilty, the military judge shall inquire into the providence of the plea). The military judge must first determine whether the accused's comments or any other evidence reasonably raises a possible defense.[3] *United States v. Jemmings*, 1 M.J. 414 (C.M.A.1976); *United States v. Brooks*, 26 M.J. 930, 932 (A.C.M.R.1988) (*en banc* reconsideration denied 7 Sept. 1988); *United States v. Clark*, 26 M.J. 589, 592–594 (A.C.M.R.), *petition filed*, 27 M.J. 173 (C.M.A.1988); *United States v. Clayton*, 25 M.J. 888, 890 (A.C.M.R.), *petition denied*, 27 M.J. 18 (C.M.A.1988); *United States v. Johnson*, 25 M.J. 553 (A.C.M.R.1987). If the matter is inconsistent, then the military judge must address the accused personally to determine whether the plea is negated by the inconsistent matter. *United States v. Brooks*, 26 M.J. at 932–933. *See also United States v. Collins*, 17 M.J. 901, 903 (A.F. C.M.R.1983), *petition denied*, 18 M.J. 292 (C.M.A.1984) (when a matter inconsistent with the plea is raised, the military judge

must inquire of the accused his position regarding the affirmative defense); R.C.M. 910(e) discussion ("If any potential defense is raised by the accused's account of the offense or by other matters presented to the military judge, the military judge should explain such a defense to the accused and should not accept the plea unless the accused admits facts which negate the defense."). The military judge should ask the accused whether he has reviewed with his defense counsel the facts in his case which would raise the defense and whether he, the accused, has determined that the facts are inadequate to afford him "an effective legal defense." *United States v. Johnson*, 25 M.J. 553, 554 (A.C.M.R.1987) (quoting *United States v. Timmins*, 45 C.M.R. 249, 253 (C.M.A.1972)). If the inconsistent matter is not resolved or negated, then the military judge must enter a plea of not guilty on behalf of the accused.

If a defense or other matter inconsistent with the plea is raised and the military judge fails to discuss the inconsistent matter with the accused, this court will then examine all of the circumstances in the record of trial to determine whether "other evidence belies the negation of the defense." *United States v. Johnson*, 25 M.J. at 554.

In the instant case, appellant's assertions that SGT Smith and SGT Holmes made repeated phone calls and were persistent in their pursuit to obtain marijuana are not, in themselves, inconsistent with appellant's plea of guilty. However, we find that those statements together with appellant's comments during the providence inquiry and the sentencing phase of the trial that he was "reluctant" to assist SGT Smith in obtaining marijuana and that the distribution "wasn't something ... [he]

---

**2.** Several times during the trial, the defense counsel and the accused made statements regarding the "defense of entrapment" which raises the possibility that they had confused it with the defense of duress. We are unable to conclude from the record that appellant was properly advised.

**3.** *Cf. United States v. Taylor*, 26 M.J. 127, 128–130 (C.M.A.1988) (the military judge has a *sua sponte* duty to give an instruction on an affirma-

tive defense when the evidence "reasonably raises" the defense; there is a parallel between the judge's duty to instruct on affirmative defenses and his duty to instruct on lesser-included offenses); *United States v. Jackson*, 12 M.J. 163, 166–167 (C.M.A.1981) (the military judge must instruct on lesser-included offenses "whenever 'some evidence' is presented to which the fact finders might 'attach credit if' they so desire").

really wanted to do," were assertions inconsistent with his pleas of guilty. The defense of entrapment requires that the suggestion to commit the crime originate with the government and that the accused had no predisposition to commit the offense. *See* R.C.M. 916(g). Appellant's comments indicate that he was asserting reluctance to distribute marijuana before and after being approached by SGT Smith. *See United States v. Vanzandt,* 14 M.J. 332, 343 (C.M.A.1982) (the focus of an entrapment defense is upon the accused and not upon the Government agent). *See also United States v. Myers,* 21 M.J. 1007, 1012 (A.C.M.R.1986) (the viability of an entrapment defense is measured subjectively rather than objectively).

In *United States v. Clark,* 26 M.J. 589, this court found that the "totality of the circumstances" demonstrated with ample evidence that the accused was predisposed to distribute drugs and that the defense of entrapment was not a credible defense. *Id.* at 594. The accused in *Clark* had been involved with drug distributions in the past with the registered source, had maintained a relationship with the registered source, assisted in the packaging of the drugs for distribution, and he received a profit from the distributions. We, however, find that within the context of this case, the fact that appellant, a private, was solicited to distribute drugs by a noncommissioned officer and that appellant throughout the trial expressed his reluctance to become involved in the distribution of drugs, specifically stating that it "wasn't something, ... [he] really wanted to do" raises the issue of entrapment, requiring the military judge to explain its elements to the appellant. Unlike the accused in *Clark,* there is no evidence in the record that appellant, although previously involved in the use of marijuana, had been previously involved in the distribution of drugs or had any drug related contact with SGT Smith, the registered source. In fact, SGT Smith's requests for

drugs surprised appellant, especially in light of the fact that SGT Smith was a noncommissioned officer.

In this case, as distinguished from *Clark,* there is more than a mere possibility of the existence of the defense. In the case *sub judice,* the evidence shows an unwillingness by appellant to commit the offenses. There is, in effect, an assertion by the appellant himself that he had no predisposition to distribute marijuana. We do not view appellant's comments as simply an attempt by him to minimize his own behavior. *Cf. United States v. Penister,* 25 M.J. 148, 153 (C.M.A.1987) (Cox, J., concurring) (matters inconsistent with a plea may be an attempt by an accused to justify his misbehavior); *United States v. Clayton,* 25 M.J. at 891 (accused's comments that informant reminded him of prior favors during the course of making the distributions of marijuana were attempts by the accused to minimize his own misbehavior). Further, we are unable to find in the record evidence of a predisposition to distribute marijuana.

### III

As appellant's comments reasonably raised the defense of entrapment, we are required, absent clear evidence of predisposition in the record, to find that the military judge erred in failing to personally address appellant regarding the entrapment defense. *United States v. Brooks,* 26 M.J. at 933.[4] "When a defense is raised, it is the *accused* who must speak for himself; it is not for his counsel to speak for him." *Id.* (emphasis in original). *See also United States v. Collins,* 17 M.J. at 903 (when a matter inconsistent with the plea is raised, the military judge should not base his acceptance of the plea on the defense counsel's conclusions regarding the validity of the defense). Merely asking counsel whether he has concluded that a viable defense did not exist is not enough. Nor is it sufficient to ask the accused if he has

---

**4.** This case is similar to *Brooks* in that in both cases the military judge inquired into the defense counsel's views on the defense of entrapment but failed to inquire of the accused whether he believed that there was a viable defense.

In *Brooks,* as in this case, this court was unable to determine from the "totality of the circumstances" that a viable entrapment defense did not exist.

discussed the defense with his counsel or for a legal conclusion that the defense is not raised. The military judge must ensure on the record that the accused understands the defense and that the accused does not believe a viable defense to the offenses to which he has entered a guilty plea exists. The military judge must ascertain from the accused whether he is, through his comments or other evidence, asserting the defense. *Id.* (citing *United States v. Timmins,* 45 C.M.R. 249, 252 (C.M.A.1972); *United States v. Collins,* 17 M.J. at 901). Such a procedure ensures that an accused is not asserting a viable defense. In doing so, both the public perception of fairness and the actual fairness of the court-martial is enhanced.

Here, the military judge only addressed appellant to inquire whether appellant had discussed the entrapment defense with his counsel. The military judge did not, on the record, explain the entrapment defense to appellant, ensure that the defense did not exist, or determine whether appellant was asserting the defense in his case. R.C.M. 910(e) discussion. *See also United States v. Buske,* 2 M.J. 465, 467 (A.C.M.R.1975) (When the military judge elicits "little more than a legal conclusion and not the underlying facts to overcome the obvious possibility of a defense," then the appellant's plea falls short of being provident.). If any evidence could reasonably raise a defense, whether or not the military judge believes that the evidence is credible, he must advise the accused of the elements of the defense. Then, he must carefully question the accused to determine whether a possible defense is negated. If the defense is not thereby negated, the plea must be set aside and there must be a trial on the merits. *United States v. Johnson,* 25 M.J. 553 (A.C.M.R.1987). At this level, we are unable to determine from our review of the record of trial the existence or nonexistence of the defense. Therefore, we find that the military judge's failure to address appellant personally to determine his position on the entrapment defense, and whether or not it was negated, was error which requires reversal.

The findings of guilty of Specifications 1, 2 and 3 are set aside. The remaining findings of guilty are affirmed. The sentence is set aside. The same or a different convening authority may order a rehearing on Specifications 1, 2, and 3 and the sentence. If the convening authority determines that a rehearing on these specifications is impractical, he may dismiss these specifications and order a rehearing on the sentence only.

Senior Judge MYERS and Judge GILLEY concur.