UNITED STATES, Appellee,

v.

Sergeant David A. ROLLINS,
432–19–8486, United States
Army, Appellant.

ACMR 8800601.

U.S. Army Court of Military Review.

4 May 1989.

Released for Publication on
18 May 1989.

**804**

For Appellant: Lieutenant Colonel Russell S. Estey, JAGC, Major Kathleen A. VanderBoom, JAGC, Captain Jeannine C. Hinman, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Kathryn F. Forrester, JAGC, Captain Marcus A. Brinks, JAGC (on brief).

Before DeFORD, KENNETT, and WERNER, Appellate Military Judges.

OPINION OF THE COURT

DeFORD, Senior Judge:

Pursuant to his pleas, the appellant was convicted by a general court-martial of two specifications of wrongful distribution of marijuana in hashish form, a violation of Article 112a of the Uniform Code of Military Justice, 10 U.S.C. § 912a (Supp.). A panel composed of officer members sentenced the appellant to a dishonorable discharge, confinement for three years, and

reduction to Private E1. The convening authority approved his sentence.

On appeal, the appellant contends that his pleas were improvident because the defense of entrapment was raised and the military judge failed to resolve this inconsistent matter. He also asserts that the sentencing deliberations of the panel were tainted by the presence of extra-judicial information in the deliberation room. We find appellant's assertions without merit.

I

The appellant was charged with three specifications of wrongful distribution of marijuana in hashish form alleged to have occurred on 15 September 1987, 15 October 1987, and 17 November 1987, respectively. He entered a plea of not guilty to the 15 September transaction and the government declined to present evidence on this transaction. He entered pleas of guilty to the remaining specifications and was ultimately convicted of these offenses; a finding of not guilty was entered with respect to the 15 September offense.

Pursuant to the plea agreement, the appellant and the government entered into a stipulation of fact. This stipulation included a rendition of the facts and circumstances of the 15 September transaction despite the plea of not guilty to this specification. The trial counsel explained that this information was included in the stipulation in order to "explain the transaction in its entirety" and the appellant agreed to this use.[1] By the stipulation, the parties agreed to the following facts.

The appellant had known a registered source of the Criminal Investigation Division (CID), Miss O., socially for more than a year both from a local nightclub and from the Mainz commissary where she worked. Miss O. "believed" the appellant was a user of hashish. While seeking possible targets for their undercover activities, Miss O. and an agent of the CID chanced upon the appellant. Miss O. invited the appellant to visit her at her apartment. On 14 September, the appellant went to Miss O.'s apartment where she told him that she

---

1. The military judge gave appropriate limiting instructions on this information.

"was going through a rough time financially" and asked the appellant "if he knew anyone that would sell her some hashish so that she could make some money." The stipulation then recites:

> The accused stated that he could get her some hashish through someone he knew. He immediately began to discuss the details of the drug transaction. The accused insisted that he had to have the money upfront [sic], before he went to get the hashish. The accused and [Miss O.] arranged for the actual transaction to take place the next day in the same apartment.

The following day, as agreed, Miss O. gave $300 to the appellant who purchased 26.16 grams of hashish in Frankfurt and subsequently delivered it to Miss O. The stipulation then recites, "The [appellant] may have had a legal defense to the 15 September transaction."

With respect to the subsequent transactions, the appellant stated during colloquy:

> [Miss O.] had been contacting [sic] me several times after the first transaction and she wanted me [to] help her out and get more hashish so she asked me several times to meet with her, and finally, I decided that I would. About 15 October, I went to her apartment and there was a guy there. I didn't know who it was and she told me it was a friend of hers—a very close friend of hers and that he was cool and he was okay.

> . . . . .

> And so we sat and talked for awhile. He talked to me and we just carried on with a casual conversation and then he brought up the subject of, did I know where I could get some hashish for him? The first thing that went to my head was—I asked him, well who are you? Are you CID or somebody? So he says, no. He says, well just tell me, can you get some for me? I told him, well— [Miss O.] said, he's okay, so I said well I guess I can. He gave me the money and I went and got it and came back and gave it to him.

> . . . . .

> [A]fter the second transaction, the guy that I met with, he wanted me to get in contact with him again so he could purchase some more, so I told him ... I don't know, so ... I told him, well give me your [phone number]. He gave me his number and I lost it. I didn't want to make contact again and [Miss O.], she approached me a couple of times at the commissary and asked me, why don't you get in contact with [the agent]. I stated, well I lost his number. She said, well I'll get back to you. I gave her my number. About 15 November, I suppose—I got a call from [the agent] and he wanted to setup another deal. In other words, he wanted me to purchase some more for him. He told me he'd be over at [Miss O.'s] house on the 17th of November, so I met with him again. Basically, the same thing happened.

The appellant transferred 27.93 grams and 29.16 grams of hashish in these subsequent transactions.

Later in the inquiry, the following discussion occurred:

> MJ: The stipulation says, with respect to the first transaction, the [appellant] may have had a legal defense to the 15 September transaction. I assume that possible defense is entrapment?
>
> CDC: Yes, Your Honor.
>
> MJ: Sergeant Rollins, one of the defenses that can be raised with respect to criminal violations is the defense that's called entrapment, and apparently, there is some question as to whether or not you could be convicted of the first transaction because of entrapment.
>
> Do you understand that?
>
> ACC: Yes, sir. I understand that.
>
> MJ: Have you discussed the defense of entrapment with [civilian defense counsel]?
>
> ACC: Yes. I have, Your Honor.
>
> MJ: Do you believe that with respect to your conduct on 15 October and 17 November, that there's any reasonable possibility that your conduct could be excused by the use of the defense of entrapment?
>
> ACC: No, sir.

The appellant's civilian defense counsel was sitting with him in the courtroom and made no comment on this point.

■ In order to find a plea of guilty provident, we must find an affirmation of guilt by the accused and a recitation by the accused of facts and circumstances sufficient to objectively support his plea. *See United States v. Foster,* 14 M.J. 246 (C.M.A.1982). *See also United States v. Hanson,* 24 M.J. 377, 379 (C.M.A.1987) (it is the duty of the military judge to ensure that an accused does not plead guilty to an offense of which he is not in fact guilty). We take the accused's statements at face value. *United States v. Lee,* 16 M.J. 278, 281 (C.M.A.1983) (citing *United States v. Jemmings,* 1 M.J. 414, 418 (C.M.A.1976)); *United States v. Brooks,* 26 M.J. 930, 932 (A.C.M.R.1988). If the facts and circumstances articulated by an accused are not consistent with the elements of the offense to which he has entered the plea of guilty, his plea must be rejected. *See United States v. Byrd,* 24 M.J. 286, 292 (C.M.A. 1987) (citing *United States v. Thomas,* 32 C.M.R. 278 (C.M.A.1962)); *United States v. Davenport,* 9 M.J. 364 (C.M.A.1980). Affirmative defenses such as entrapment are generally held to constitute matters "inconsistent" with a plea of guilty. *See, e.g., United States v. Byrd,* 24 M.J. at 293; *United States v. Clark,* 26 M.J. 589, 594 (A.C.M.R.1988).[2]

There can be no issue of providence with respect to the 15 September transaction because the appellant entered a plea of not guilty; appellant was found not guilty of this offense when the government presented no evidence. Appellant argues, however, that the subsequent transactions were tainted with a presumption of entrapment because all three transactions were "inextricably entwined and related." *See United States v. Bailey,* 21 M.J. 244 (C.M.A.1986). This assertion is premised upon a representation by the trial counsel that the 15 September transaction "explains" the transactions which followed.

■ First, we find that the facts set forth in the stipulation of fact and articulated by the appellant during the providence inquiry do not raise the defense of entrapment as to the 15 September transaction. The defense of entrapment is raised by evidence that the government suggested or induced the offense charged.[3] *United*

---

**2.** As noted in *Byrd,* some affirmative defenses admit all of the factual allegations essential to the charged offense but interpose new facts which, if sufficient, would require a finding of not guilty. *United States v. Byrd,* 24 M.J. at 292. *See, e.g., United States v. Palus,* 13 M.J. 179 (C.M.A.1982) (duress); *United States v. Cortes–Crespo,* 13 M.J. 420 (C.M.A.1982) (insanity); *United States v. Cook,* 12 M.J. 448 (C.M.A.1982) (former jeopardy). *Cf. United States v. Lee,* 16 M.J. 278, 281 (C.M.A.1983) (factual impossibility is a defense inconsistent with the elements of the offense of absent without leave). Consequently, facts and circumstances which indicate the availability of such defenses are not technically "inconsistent" with the plea of guilty because the accused confesses facts sufficient to establish all of the elements of the offense. Thus, the actual facts of a given case may irretrievably present facts consistent both with a finding of guilty and with a finding that a defense is available.

Such defenses pose a dilemma both for the courts and for those accused of crimes. *Jemmings* indicates that the trial court is "well advised" to "secure a factual basis to assure that [an affirmative defense] is not available." *United States v. Jemmings,* 1 M.J. 414 (C.M.A.1976). Yet, this may not be possible because an accused must reveal under oath the actual facts of his offense. Therefore, a literal application of *Jemmings* would negate the power of an accused to waive any potential affirmative defenses.

Although military courts have yet to decide a case on point, such an impasse may result in an arbitrary rejection of a guilty plea in violation of *Penister. United States v. Penister,* 25 M.J. 148, 152 (C.M.A.1987). Perhaps the better rule would consider such matters as suggesting "a lack of understanding of the meaning and effect of the plea," Article 45(a), UCMJ, 10 U.S.C. § 845(a), or as indicating that the plea is not "knowing and intelligent." *See United States v. Leverette,* 9 M.J. 627, 631 n. 10 (A.C.M.R.), *affirmed,* 9 M.J. 421 (C.M.A.1980) (summary disposition). Such a rule would permit an accused desiring to forgo the risk of raising an affirmative defense in exchange for a favorable plea agreement to disclaim the defense upon proper advice of its constituent elements. *See United States v. Jemmings,* 1 M.J. at 414 ("we cannot say that [*Jemmings* ] satisfactorily disclaimed the defense of duress").

**3.** Once the issue is raised, the fact-finder resolves the issue by balancing the accused's resistance to temptation against the amount of government inducement. *United States v. Van-*

*States v. Vanzandt,* 14 M.J. 332, 343 (C.M. A.1982). *But see United States v. Clark,* 26 M.J. 589, 593 (A.C.M.R.1988). The facts of record demonstrate that the government agent, Miss O., merely asked the appellant "if he knew anyone that would sell her some hashish" whereupon the appellant immediately volunteered his services and made arrangements for the purchase and delivery of the hashish. Thus, there was no government suggestion that the appellant himself distribute hashish. *Cf. United States v. Brooks,* 26 M.J. 930, 931–932 (A.C.M.R.1988) (entrapment defense raised where accused stated that the government agent initially asked if he knew anyone who sold drugs, accused resisted, and government agents persisted in badgering accused to obtain drugs). Further, the mere fact that Miss O. made representations that she was "going through a rough time financially" and wanted to make money does not present a situation of such urgency to warrant an inference that the appellant was induced to commit the offense in light of his ready accommodation of her stated desire. *See United States v. Meyers,* 21 M.J. 1007 (A.C.M.R.1986). The stipulated "fact" that the appellant "may have had a legal defense" to this transaction constitutes nothing more than a recitation of a tactical possibility of the defense. *See United States v. Clark,* 26 M.J. 589, 593 (A.C.M.R.1988). This is an insufficient basis for setting aside an otherwise provident plea of guilty. *United States v. Logan,* 47 C.M.R. 1 (C.M.A.1973).

▬ Assuming *arguendo* that the appellant was entrapped with respect to the 15 September transaction, we find that the facts of record cannot support an inference that the subsequent transactions were tainted.[4] *Cf. United States v. Jacobs,* 14 M.J. 999, 1001 (A.C.M.R.1982), *petition denied,* 15 M.J. 475 (C.M.A.1983) (whether subsequent transactions are tainted by government conduct during prior transactions is a question of fact). Miss O.'s financial hardship did not motivate the subsequent transactions with a third party which occurred a month after the 15 September transfer to Miss O. The only common elements between the 15 September transaction and the subsequent transaction was the place of occurrence, Miss O.'s apartment, and Miss O.'s presence at these transactions. The record does not suggest that the appellant transferred the hashish to the government agent because of any inducement by Miss O. Rather, the appellant engaged in the subsequent transactions with this stranger solely upon the assurance that the undercover agent was "okay." His reluctance can be attributed to his fear of detection. We find that there was no taint to the subsequent transactions and that appellant recognized, after consultation with counsel, that the defense of entrapment could not be successfully employed under these circumstances. Accordingly, his pleas of guilty were entirely provident.

II

Citing *United States v. Stone,* the appellant contends that the military judge erred in failing to conduct a post-trial hearing to resolve allegations of misconduct by the members of the court-martial. *United States v. Stone,* 26 M.J. 401 (C.M.A.1988). Specifically, the appellant contends that an issue of *Stars and Stripes* newspaper was present in the deliberation room which contained an article describing a helicopter crash caused by faulty maintenance. The appellant argues that this article was unduly inflammatory on the grounds that he was assigned to helicopter maintenance and the trial counsel's sentencing argument relied in part on the possible effects

---

*zandt,* 14 M.J. at 344 (the "subjective test"). In resolving the issue, the fact-finder focuses on the accused's "latent predisposition to commit the crime, which is triggered by the government inducement." *Id.*

**4.** The facts and theories which prompted the parties to stipulate to the possibility of the de-

fense are not clear from the record. On appeal, the appellant has advanced no theory of entrapment beyond the government's stipulation which, according to the appellant, constitutes a concession. This court is not bound by such a purported concession. Article 66(c), UCMJ, 10 U.S.C. § 866(c).

of drug use on helicopter maintenance programs.

 When allegations of misconduct by members are brought to the attention of the trial judiciary before the record of trial is authenticated, the trial court should convene a post-trial session in order to resolve the issue. *United States v. Stone*, 26 M.J. at 403. If the allegations are made after the record has been authenticated and before the record has been transmitted to this court, the convening authority should order a post-trial *DuBay* [5] hearing to resolve the issue.

 In the instant case, the trial defense counsel's affidavit alleges that the affiant and the appellant, intent on using the deliberation room for consultation, had entered the room shortly after trial and allegedly discovered the objectionable matter. The affiant then states, "After noticing this newspaper, I informed the military judge, Trial Counsel Captain Aletha Barnett, and Captain Bill Gillis, administrative law." By attaching this affidavit to his post-trial submission, appellant also notified the staff judge advocate and the convening authority. Although we find no basis from which to conclude that the military judge was advised of the allegation prior to authentication, the allegation was obviously brought to the attention of the convening authority before his action on the case.

Finding a timely assertion of alleged misconduct, we must now determine whether the allegation is appropriate for inquiry. *See United States v. Stone*, 26 M.J. at 401 (citing *United States v. Accordino*, 20 M.J. 102 (C.M.A.1985)). We find that the article of which appellant complains merely recites a story of a helicopter crash in the Republic of Honduras in which crew injuries occurred and one in which an Army spokesman assumed that the reason for the crash was a mechanical malfunction, as the crash did not occur in a hostile fire zone. There was no showing that the crash was a result of faulty maintenance, much less a consequence of faulty maintenance by an air-

craft mechanic under the influence of drugs. Such crashes are reasonably common throughout the world and could hardly have impacted on the court members' deliberations in this case.

Accordingly, this allegation of error is without foundation and merit. The findings of guilty and the sentence are affirmed.

Judge KENNETT and Judge WERNER concur.

---

5. *United States v. DuBay*, 37 C.M.R. 411 (1967)