# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
YOB, LIND, and KRAUSS
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class SAMIR ZUBAIR**
**United States Army, Appellant**

ARMY 20110433

Headquarters, 82d Airborne Division
Patrick Parrish, Military Judge (motions hearing)
Karin Tackaberry, Military Judge (arraignment and trial)
Colonel Lorianne Campanella, Staff Judge Advocate

For Appellant:  Major Richard Gorini, JA; Captain Susrut A. Carpenter, JA (on brief).

For Appellee:  Lieutenant Colonel Amber J. Roach, JA; Captain Chad Fisher, JA; Captain Kenneth Borgnino, JA (on brief).

31 December 2013

----------------------------------
MEMORANDUM OPINION
----------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

LIND, Judge:

A general court-martial composed of officer members convicted appellant, contrary to his pleas, of two specifications of attempted distribution of hashish; one specification of making a false official statement; one specification of distribution of hashish on divers occasions; and one specification of use of hashish on divers occasions, in violation of Articles 80, 107, and 112a, Uniform Code of Military Justice, 10 U.S.C. §§ 880, 907, 912a (2006) [hereinafter UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the adjudged sentence.

This case is before the court for review under Article 66, UCMJ.  Appellant alleges, and the government concedes, that: the military judge abused his discretion by denying the defense's motion to suppress appellant's confession, and

consequently, the false official statement findings of guilty should be set aside; that the evidence was factually and legally insufficient to support the findings of guilty of the two specifications of attempted distribution of hashish; that the staff judge advocate failed to comment on legal errors raised in appellant's post-trial matters; and that the excessive post-trial delay in this case warrants relief under *United States v. Collazo*, 53 M.J. 721 (Army Ct. Crim. App. 2000). We accept the government's concessions and will grant relief in our decretal paragraph. We have also considered those matters personally raised by appellant pursuant to *United States v. Grostefon,* 12 M.J. 431 (C.M.A. 1982), and find that they lack merit.

## FACTS

In early April 2010, appellant's first sergeant (1SG), 1SG MH, reassigned appellant from Camp Stone, Afghanistan to Combat Outpost (COP) Ricketts, Afghanistan. Prior to appellant's arrival at COP Ricketts, a number of soldiers bought hashish from local nationals in the Afghan National Army and Afghan National Police (ANA/ANP). The soldiers at COP Ricketts used and distributed the hashish among themselves. Appellant spoke Dari and Pashto and performed duties as an interpreter. While assigned to COP Ricketts, appellant bought hashish from ANA/ANP local nationals, and on divers occasions, appellant both used the hashish with other soldiers and distributed the hashish to other soldiers. Appellant's unit at Camp Ricketts suspected appellant of drug offenses, and on or about 21 June 2010 transferred appellant back to Camp Stone.

## LAW AND DISCUSSION

I. Military Judge's Denial of Motion to Suppress Appellant's Statement

A. Background

Upon appellant's arrival at Camp Stone from COP Ricketts on or about 21 June 2010, appellant was summoned to 1SG MH's office. Several other non-commissioned officers were present. First sergeant MH asked appellant, "what's going on?" When appellant did not respond, 1SG MH left the room, called appellant's first sergeant from COP Ricketts, and learned that appellant was returned to Camp Stone because he had been identified at COP Ricketts as having used hashish. First Sergeant MH became "angry" and "upset," returned to his office, and without advising appellant of his Article 31(b), UCMJ, rights, asked appellant: "Why would you do something like this?" or words to that effect. First sergeant MH spoke to appellant for approximately fifteen to twenty minutes, telling appellant, among other things, that he was "personally upset [appellant] had done this." Appellant "began to show obvious signs of stress," including "tearing up a little bit." At that point, 1SG MH and another non-commissioned officer both asked appellant:

2

"what's going on?"  Appellant eventually stated "there was drug use going on" and that appellant had "smoked hashish."

First sergeant MH stopped questioning appellant and went to the unit's legal advisor for advice as to how to proceed.  They decided to have Captain (CPT) JF advise appellant of his Article 31(b), UCMJ, rights and take a sworn statement from appellant.  Appellant was escorted by a non-commissioned officer to this meeeting with CPT JF.  Captain JF advised appellant of his Article 31(b), UCMJ, rights, but did not administer a cleansing statement.  Appellant waived his Article 31(b), UCMJ, rights and denied involvement in any use or distribution of hashish at COP Ricketts.  This meeting lasted approximately ten to fifteen minutes.

After 1SG MH learned appellant had denied any wrongdoing in his statement to CPT JF, appellant was escorted back to 1SG MH's office.  First Sergeant MH was "angry," "upset," and "disappointed" because appellant was "lying to somebody."  Once again, in the presence of other non-commissioned officers, and without reading appellant his Article 31(b), UCMJ, rights, 1SG MH asked appellant: "why are you doing this?" and "why are you lying?"  First sergeant MH informed appellant that the soldiers at COP Ricketts who are using hashish are also "guarding the firebase," and that if appellant did not tell the truth, "somebody is going to get killed."  First sergeant MH then told appellant, "you need to go in [t]here and you need to tell the truth."  Appellant began crying and shaking his head, stating, "no, no, no."  First sergeant MH repeatedly urged appellant "to tell the truth."  The meeting with 1SG MH concluded when 1SG MH ordered appellant to "go back to [CPT JF]."  This second meeting with 1SG MH lasted approximately thirty minutes.  A non-commissioned officer escorted appellant back to the building where he had previously met with CPT JF.

Shortly thereafter, CPT JF returned to the same building in order to ask appellant whether he would consent to a urinalysis.  Appellant consented to the urinalysis.  Captain JF also decided to ask appellant whether he wished to give another statement.  Appellant told CPT JF that he wanted to give another statement because he "want[ed] to get something off [his] chest."  Captain JF then reminded appellant of his right to counsel (although not to silence), and appellant made the statement in Prosecution Exhibit 3: "I did not give hashish to anyone to include American Soldiers," which is the basis for the sole false official statement specification of Charge II.  Appellant also admitted in the statement that he "smoked [hashish]" on one occasion in either April or June 2010.  This second meeting with CPT JF lasted at most thirty minutes.

At trial, defense filed a pretrial motion to suppress Prosecution Exhibit 3.  During the Article 39(a), UCMJ, hearing, both 1SG MH and CPT JF testified to the facts outlined above.  The military judge concluded appellant's statement was

voluntary, and denied the motion to suppress.  At trial, the government entered Prosecution Exhibit 3 into evidence.

### B.  Law and Analysis

Appellant contends the military judge abused his discretion by denying the motion to suppress his second statement to CPT JF.  Appellant argues the military judge erred when he ruled that appellant's statement to CPT JF was voluntary; that the statement should therefore not have been admissible at trial; and that the false official statement conviction (Charge II and its specification) should be overturned because appellant's involuntary statement was the sole basis for the false official statement charged.  The government concedes that at trial, the government did not prove by a preponderance of the evidence that appellant's statement was voluntary. The government also concedes that Charge II and its specification should be set aside and dismissed.

"We review a military judge's ruling on a motion to suppress for abuse of discretion." *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004) (citing *United States v. Monroe*, 52 M.J. 326, 330 (C.A.A.F. 2000)).  "In reviewing a military judge's ruling on a motion to suppress, we review factfinding under the clearly-erroneous standard and conclusions of law under the *de novo* standard." *United States v. Ayala*, 43 M.J. 296, 298 (C.A.A.F. 1995).  "Thus on a mixed question of law and fact . . . a military judge abuses his discretion if his findings of fact are clearly erroneous or his conclusions of law are incorrect." *Id.*

Our superior court has looked at the Supreme Court's decision in *Oregon v. Elstad*, 470 U.S. 298 (1985), "for guidance on evaluating the admissibility of a confession obtained subsequent to one that is deemed illegally obtained." *United States v. Brisbane*, 63 M.J. 106, 114 (C.A.A.F. 2006).

> [W]here the earlier confession was "involuntary" only because the suspect had not been properly warned of his panoply of rights to silence and to counsel, the voluntariness of the second confession is determined by the totality of the circumstances.  The earlier, unwarned statement is a factor in this total picture, but it does not presumptively taint the subsequent confession.

*Brisbane*, 63 M.J. at 114 (quoting *United States v. Cuento*, 60 M.J. 106, 109 (C.A.A.F. 2004)).  The additional factors considered in a voluntariness analysis are found in the Supreme Court's decision in *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973):

> In determining whether a defendant's will was overborne in a particular case, the Court has assessed the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. Some of the factors taken into account have included the youth of the accused, his lack of education, or his low intelligence, the lack of any advice to the accused of his constitutional right, the length of detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep.

*Brisbane*, 63 M.J. at 114 (quoting *Schneckloth*, 412 U.S. at 226 (citations omitted)).

On the facts before us, we agree with the parties that the military judge abused his discretion when he concluded appellant's second statement to CPT JF was voluntary. After 1SG MH found out appellant had denied any wrongdoing, 1SG MH had appellant escorted back to his office. First sergeant MH then accused appellant of lying to CPT JF and repeatedly told appellant in an angry tone of voice that he had to "go in [t]here and . . . tell the truth." While an "admonishment to tell the truth does not ordinarily render a subsequent statement inadmissible," 1SG MH went past merely exhorting appellant to tell the truth when he also ordered appellant to return to meet with CPT JF. *United States v. Morgan*, 40 M.J. 389, 394 (C.M.A. 1994) (citation omitted). Appellant, a private first class, had already confessed to drug use to 1SG MH earlier, but never received a cleansing warning. Appellant was crying and denying his involvement during this second meeting with 1SG MH. Immediately after appellant received the order to "go back to [CPT JF]" from his first sergeant, he was escorted by a non-commissioned officer to meet CPT JF. We therefore find the military judge abused his discretion when he denied appellant's motion to suppress. We will set aside Charge II and its specification in our decretal paragraph.[1]

---

[1] Neither party suggests that appellant's conviction for wrongful use of hashish on divers occasions (Specification 2 of Charge III) should be set aside because of the admission of appellant's statement. We find the error in admitting appellant's statement was harmless beyond a reasonable doubt with respect to Specification 2 of Charge III. *See United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (citing *Arizona v. Fulminante*, 499 U.S. 279, 285 (1991)). "For an error in admitting the statement to be harmless beyond a reasonable doubt, this court must be convinced that there was no reasonable likelihood that its erroneous admission contributed to the verdict." *United States v. Hutchins*, 72 M.J. 294, 299 (C.A.A.F. 2013) (citation omitted). The evidence of appellant's use of hashish on divers occasions is

(continued . . .)

## II.  Factual and Legal Sufficiency of Attempted
## Distribution of Hashish to Specialist DP and Private AA

### A.  Background

The evidence presented at trial showed that on or about 16 June 2010, after appellant had been at COP Ricketts approximately two months, appellant asked Specialist (SPC) DP and Private (PVT) AA if they wanted hashish.  Both SPC DP and PVT AA declined.  Although there was evidence that appellant had purchased hashish from ANA/ANP local nationals regularly since his arrival to COP Ricketts in early April 2010, and that he also regularly used hashish with and distributed hashish to fellow soldiers, SPC DP and PVT AA testified that appellant did not show them hashish when he made the offer.  There was also no evidence put on by the government that, at the time appellant offered the hashish to the two soldiers, appellant had access to hashish.

### B.  Law & Analysis

Appellant argues his convictions for attempted distribution of hashish (Specifications 1 and 2 of Charge I) are factually and legally insufficient.

In performing our duty under Article 66, UCMJ, we conduct a de novo review of legal and factual sufficiency.  *United States v. Gilchrist*, 61 M.J. 785, 793 (Army Ct. Crim. App. 2005) (citing *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002)).  The test for legal sufficiency is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt."  *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010) (citations omitted).  The test for factual sufficiency is "whether, after weighing the evidence of record and making allowances for not having personally observed the witnesses, [this court is] convinced of appellant's guilt beyond a reasonable doubt."  *Gilchrist*, 61 M.J. at 793 (citing *United States v. Turner*, 25 M.J. 324, 325 (C.M.A. 1987)).

Article 80, UCMJ, provides that an "act, done with specific intent to commit an offense under this chapter," must amount "to more than mere preparation."

---

(. . . continued)
overwhelming.  Four soldiers testified that they smoked hashish with appellant on multiple occasions while at COP Ricketts; a fifth soldier testified he smoked hashish with appellant on one occasion.  Appellant's statement admitting to use of hashish on one occasion added little to the government's case with respect to this specification.

UCMJ art. 80(a). The conduct must constitute a "substantial step toward commission of the crime." *United States v. Byrd*, 24 M.J. 286, 290 (C.M.A. 1987). This substantial step has to "unequivocally demonstrate that the crime will take place unless interrupted by independent circumstances." *United States v. Winckelmann*, 70 M.J. 403, 407 (C.A.A.F. 2011) (citations and internal quotation marks omitted).

The only evidence presented by the government to support the attempted distribution charge was that appellant offered to sell hashish to SPC DP and PVT AA. We agree with appellant's argument, and the government's concession, that appellant's conduct in this case did not amount to more than mere preparation. *See Byrd*, 24 M.J. 286; *United States. v. Presto*, 24 M.J. 350 (C.M.A. 1987). *See generally United States v. Jones*, 37 M.J. 459, 461 (C.M.A. 1993). Therefore, we find the evidence is legally and factually insufficient to sustain the findings of guilty of Charge I and its specifications, and we will provide relief in our decretal paragraph.

### III. Staff Judge Advocate's Failure to Address Legal Errors Raised in Appellant's Rule for Courts-Martial 1105 matters

Appellant argues the staff judge advocate (SJA) failed to comment on the following legal errors raised in appellant's post-trial matters: (1) the military judge erred in denying the defense motion to dismiss Specification 1 of Charge I because "it was the beginning of the completed distribution of hashish" charged in Specification 1 of Charge III; and (2) the military judge erred in denying the defense motion to dismiss Specification 2 of Charge I because "the evidence was factually insufficient to substantiate a 'substantial step' required" for an offense of attempted distribution of hashish. Appellant seeks a new staff judge advocate recommendation (SJAR) and action.

The government concedes the SJA failed to identify or address as legal error appellant's submissions regarding dismissal of Specifications 1 and 2 of Charge I. Although not raised by appellant, the government further concedes that the SJA failed to acknowledge or opine on another legal error raised by appellant in his post-trial matters: disparate sentences between appellant and a co-actor, PVT Teague.[2]

---

[2] Appellant alleged in his post-trial matters that: "Reduction in the sentence is equitable because PVT Teague, a much more culpable individual convicted of substantially similar crimes, was adjudged a 24 month sentence." In light of the government's concession, we accept that this amounts to an assertion of legal error of sentence disparity under the circumstances of this case.

The government concurs with appellant that remand to the convening authority for a new SJAR and action is appropriate.

While the SJA acknowledged in the addendum the relief the defense requested in the post-trial matters, we agree with the parties that the SJA did not identify or offer an opinion on the legal errors raised by appellant as required by Rule for Courts-Martial 1106(d)(4). Ordinarily, "failure by the [SJA] to respond to an allegation of legal error . . . requires remand to the convening authority for comment by the [SJA]." *United States v. Hill*, 27 M.J. 293, 297 (C.M.A. 1988). However, our superior court has permitted us to examine the underlying allegation of error, and if we find "there is no error in the first instance at trial, [then there is no] prejudicial error in the failure of the SJA to respond . . . ." *United States v. Welker*, 44 M.J. 85, 88-89 (C.A.A.F. 1996); *see also Hill*, 27 M.J. at 297 ("[Service courts are] free to affirm when a defense allegation of legal error would not foreseeably have led to a favorable recommendation by the [SJA] or corrective action by the convening authority.").

We do not agree that a remand to the convening authority is appropriate in this case. Applying *Welker* and *Hill*, we examine the underlying allegation of errors raised by appellant in his post-trial matters. We have already found appellant's allegations that Specifications 1 and 2 of Charge I are factually and legally insufficient meritorious. However, the military judge's merger of Specifications 1 and 2 of Charge I with Specification 1 of Charge III (distribution of hashish) for sentencing and the relief we provide in our decretal paragraph moots any possibility of prejudice to appellant by the SJA's failure to comment on the legal errors.

We now turn to appellant's allegation of disparate sentencing as compared to PVT Teague. Courts of criminal appeals are required to "engage in sentence comparison with specific cases . . . 'in those rare instances in which sentence appropriateness can be fairly determined only by reference to disparate sentences adjudged in closely related cases.'" *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999) (quoting *United States v. Ballard,* 20 M.J. 282, 283 (C.M.A. 1985)). Appellant bears the burden of proving that: (1) the cases are "closely related;" and (2) the sentences are "highly disparate." *Id.* If appellant meets both prongs, the burden shifts to the government to show a "rational basis" for the disparity. *Id.* Closely related cases include those which pertain to "coactors involved in a common crime, servicemembers involved in a common or parallel scheme, or some other direct nexus between the servicemembers whose sentences are sought to be compared." *Id.* Sentence disparity is determined by reference to the adjudged sentence in closely related cases. *United States v. Roach,* 69 M.J. 17, 21 (C.A.A.F. 2010). "Sentence comparison does not require sentence equation." *United States v. Durant,* 55 M.J. 258, 260 (C.A.A.F. 2001) (citations omitted).

8

Turning to this case, we take judicial notice of the promulgating order in PVT Teague's trial.[3]  Both appellant and PVT Teague were convicted of wrongful use and distribution of hashish on divers occasions at or near Maqur, Afghanistan during similar timeframes[4] while receiving special pay under 37 U.S.C. § 310, in violation of Article 112a, UCMJ.  Private Teague was also convicted of one specification of attempted distribution of hashish; two specifications of failure to go to his appointed place of duty; one specification of failing to obey a lawful regulation by possessing drug paraphernalia; one specification of assault consummated by a battery; one specification of obstruction of justice; and one specification of wrongful solicitation of another to distribute hashish, in violation of Articles 80, 86, 92, 128, and 134 UCMJ.  Private Teague testified at appellant's trial that he and appellant were coactors involved in a common crime with respect to the use and distribution of hashish, thus, appellant has met his burden that the cases are "closely related."

In conducting our analysis as to whether appellant has met his burden to show that the sentences are "highly disparate," we recognize that PVT Teague stands convicted of additional misconduct while appellant, as a result of our setting aside Specifications 1 and 2 of Charge I and the Specification of Charge II, does not. Appellant's adjudged sentence was a bad-conduct discharge, confinement for three years, forfeiture of all pay and allowances, and reduction to the grade of E-1. Private Teague's adjudged sentence was a bad conduct discharge, confinement for twenty-seven months, and forfeiture of all pay and allowances.  Other than reduction in rank, which was not a sentencing option in PVT Teague's case because he was an E-1 at the time of his court-martial, the sentence disparity is nine months of confinement.   Appellant has failed to meet his burden that the sentences are "highly disparate" under the facts of this case.  *See, e.g., Lacy*, 50 M.J. 286.  Thus, his claim of disparate sentencing in his post-trial matters lacks merit and would not have resulted in a favorable recommendation by the SJA or any corrective action by the convening authority.[5]

---

[3] General Court-Martial Order Number 16, Headquarters, 82d Airborne Division, Fort Bragg, North Carolina, dated 11 August 2011, as corrected by *United States v. Teague*, ARMY 20110198 (Army Ct. Crim. App. 22 May 2012) (order).

[4] Appellant's use and distribution of hashish occurred between on or about 1 April 2010 and on or about 22 June 2010.  PVT Teague's use of hashish occurred between on or about 1 February 2010 and 22 June 2010.  PVT Teague's distribution of hashish occurred between on or about 1 October 2009 and on or about 22 June 2010.

[5] We note the convening authority reviewed appellant's post-trial matters and was given the opportunity to grant appellant clemency based solely on appellant's allegation that: "Reduction in the sentence is equitable because PVT Teague, a much

(continued . . .)

IV.  Post-Trial Delay

Finally, appellant moves for relief for dilatory post-trial processing.  The parties agree that, absent defense delay, it took the government 366 days to process this 496-page record of trial from announcement of sentence to action.  Appellant alleges he deserves relief because the excessive post-trial delay violated his due-process right to a timely review of his case.  Appellant also argues that this court should grant relief for the excessive delay under our Article 66, UCMJ, sentence appropriateness powers.  While the government denies that appellant suffered a due process violation, the government concedes that appellant should receive two months of sentence credit as a result of the unreasonable and unexplained delay.

Despite the excessive delay in the processing of appellant's case, appellant fails to demonstrate the prejudice necessary to warrant relief as a matter of law under *United States v. Moreno,* 63 M.J. 129, 138-41 (C.A.A.F. 2006).

Though we find no prejudice as a result of the excessive delay, the court must still review the appropriateness of the sentence in light of the unjustified dilatory post-trial processing.  UCMJ art. 66(c); *United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) ("[Pursuant to Article 66(c), UCMJ, service courts are] required to determine what findings and sentence 'should be approved,' based on all the facts and circumstances reflected in the record, including the unexplained and unreasonable post-trial delay.").  *See generally United States v. Toohey*, 63 M.J. 353, 362-63 (C.A.A.F. 2006); *United States v. Ney*, 68 M.J. 613, 617 (Army Ct. Crim. App. 2010); *Collazo*, 53 M.J. at 727.  Given the unjustified dilatory post-trial processing of appellant's case, and in light of our review of the entire record and the government's concession, we find it appropriate to set aside two months of appellant's confinement.

**CONCLUSION**

The findings of guilty of Charge I and its specifications and Charge II and its specification are set aside and dismissed.  The remaining findings of guilty are AFFIRMED.

Although appellant requests a sentence rehearing, after conducting a thorough analysis in accordance with the principles articulated in *United States v. Sales*,

---

(. . . continued)
more culpable individual convicted of substantially similar crimes, was adjudged a 24 month sentence," notwithstanding the SJA's failure to identify the issue as legal error.

22 M.J. 305 (C.M.A. 1986) and *United States v. Winckelmann*, ___ M.J. ___, slip op. at 12-13 (C.A.A.F. 18 Dec. 2013), we are confident in our ability to reassess appellant's sentence to cure the errors noted.

In evaluating the *Winckelmann* factors, we find there is no dramatic change to the sentencing landscape. The military judge merged Specifications 1 and 2 of Charge I (attempted distribution of hashish) with Specification 1 of Charge III (distribution of hashish) for sentencing. Our dismissal of the specification of Charge II (false official statement) only reduces the maximum punishment from thirty-two years to twenty-seven years of confinement. The gravamen of appellant's misconduct is the distribution of hashish to fellow soldiers on divers occasions and his use of hashish on divers occasions in a deployed setting. Furthermore, the offenses of which appellant remains convicted, involving the use and distribution of controlled substances, are commonly reviewed by this court.

After our review of the record, we are confident that, absent the errors noted, appellant would have received a sentence of at least a bad-conduct discharge, confinement for thirty-two months, total forfeiture of pay and allowances, and reduction to the grade of E-1. *See Sales*, 22 M.J. at 308. Furthermore, having considered the excessive post-trial delay, the entire record, and the particular facts and circumstances of this case, we also find a two-month reduction in the sentence appropriate. *See* UCMJ art. 66(c).

We affirm only so much of the sentence as provides for a bad-conduct discharge, confinement for thirty months, total forfeiture of pay and allowances, and reduction to the grade of E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by this decision, are ordered restored. *See* UMCJ arts. 58a(b), 58b(c), and 75(a).

Senior Judge YOB and Judge KRAUSS concur.

FOR THE COURT:

ANTHONY O. POTTINGER
Chief Deputy Clerk of Court